**UNITED STATES of America, Appellee,**

v.

**Michael Lee HARVEY, Appellant.**

No. 83–5256.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1984.

Decided May 22, 1986.

Jonathan Shapiro (Jonathan Shapiro and Associates, P.C., on brief), for appellant.

William G. Otis, Asst. U.S. Atty., (Elsie L. Munsell, U.S. Atty.; Karen P. Tandy, Asst. U.S. Atty., on brief), for appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

This is an appeal by Michael Harvey from an order denying his motion in this criminal action in the Eastern District of Virginia for enforcement of a plea agreement which he contended barred his prosecution in another district in a related case. The district court denied the motion on the basis that the plea agreement by its terms only prevented Harvey's prosecution in the Eastern District of Virginia. Because we conclude that the plea agreement was, as a matter of law, ambiguous on the point, and that in such a case the ambiguity must be construed against the government, we vacate the order and remand for further proceedings in the district of pending prosecution.

**I**

This appeal arises out of one of a series of related indictments returned over a two year period, starting in early 1982, in the Eastern District of Virginia, the District of South Carolina, and the Eastern District of North Carolina, respectively. The indictments charged separate drug smuggling and distribution conspiracies and related substantive offenses involving a number of defendants, including Michael Harvey, in one or more of the conspiracies. All of the indictments were based upon a generally related set of drug smuggling and distribution operations carried out by various ones of the defendants extending over the better part of ten years starting in 1974 and over wide reaches of the eastern seaboard. The general scope of these operations, their principal participants, and the interrelation of those operations charged to involve separate conspiracies are outlined in detail in *United States v. MacDougall, et al.*, 790 F.2d 1135 (4th Cir.,1986), also decided this day on consolidated appeals from convictions under one of the related indictments in the District of South Carolina.

Inevitably, the overlapping nature of the separate conspiracies charged—in both personnel, spatial and temporal terms—has spawned questions of double jeopardy as defendants alleged to have been involved in more than one of the conspiracies have been successively prosecuted. Some of the double jeopardy claims have in fact been upheld at the trial court level, while others have been there denied and the denials then affirmed this day on the appeals in *MacDougall*. We need not recapitulate here either the common factual background or the procedural interrelationships between the indictments as extensively outlined in *MacDougall;* it suffices here simply to put Michael Harvey's particular situation in the context relevant to his appeal in this case. For his appeal grows out of the very interrelationship between conspiracies above noted, though in this case the problem is not presented as one of double jeopardy but as one of the reach of the "immunity" element of a plea agreement.

Michael Harvey was indicted on conspiracy and related substantive counts in two of the indictments, first in the Eastern District of Virginia (No. 31–A); later in the District of South Carolina (No. 166). The Eastern District of Virginia indictment, out of which this appeal arises, was returned on February 2, 1982. It was an 18-count indictment of Michael and his brother, Leon D. Harvey, an alleged ringleader in several of the separate conspiracies charged. Michael Harvey was charged in nine of the counts with, among other things, a conspiracy to possess and distribute hashish from the Spring of 1980 through January 1981 (Count 16), and two substantive offenses of distribution of hashish (Counts 17 and 18).

Michael first pleaded not guilty. Following hearings on several pre-trial motions, however, Harvey's counsel, Larry Turner, and Assistant United States Attorney Karen Tandy negotiated a plea agreement. Under its terms, Harvey would plead guilty

to a single count—Count 7—charging interstate travel with the intent to carry on the illegal activity of possession and distribution of hashish in violation of 18 U.S.C. § 1952(a)(3); in principal exchange, the government would move to dismiss the remaining eight counts against Michael Harvey, and, to an extent now disputed, would abstain from further prosecution of Harvey for "violations" related to those charged in the indictment.

A written memorial of the negotiated plea agreement, set out in full in the margin because of its critical importance on this appeal,[1] was prepared by Ms. Tandy following completion of the plea negotiations. According to defense counsel's uncontradicted testimony, a copy was given him only ten minutes before the commencement of the Rule 11 guilty plea proceeding at which the agreement was to be proffered. At the outset of that proceeding on October 6, 1982, Ms. Tandy presented the agreement to the court by reading it aloud, verbatim. Following this presentation, the district court carefully examined Harvey in unchallenged accordance with the Rule 11 requirements. Among other things of importance to this appeal, Michael Harvey, responding to direct questions by the court, indicated that he had heard the "representations of the Assistant United States Attorney with regard to the plea agreement"; that it was "a fair representation"; and was the "entire understanding."

No further representations about the parties' specific understanding of the agreement were made, nor were any questions raised about its meaning by either counsel, the court, or the defendant during the rest of this proceeding. At the conclusion of the proceeding, the court found that the proffered guilty plea was voluntarily and understandingly made and had a basis in fact, and therefore accepted the plea. Sentencing was deferred pending receipt of a presentence report, and Harvey remained released on bond.

At the sentencing hearing approximately one month later, Attorney Turner for the defendant and Assistant United States Attorney Tandy for the Government engaged in allocution. Concluding his, Turner, in Ms. Tandy's presence, asserted to the court, "I don't think Michael Harvey will be back in this court or any other court. I think he is through, I think this court can rely upon that." Following this, Harvey himself asserted to the court, "I promise you will never see me in this courtroom again."

For the Government, Ms. Tandy then began by conceding that Harvey had "never been caught previously for any criminal offenses" and that "he was influenced in this case by an older brother who was very heavily involved in marijuana and hashish smuggling." But she then emphasized that Michael was nevertheless heavily involved in relatively high level aspects of

---

**1.** As orally presented, the plea agreement was as follows:

May it please the Court, this matter comes on for a change of plea. It is my understanding that the defendant, MICHAEL LEE HARVEY, wishes to change his plea of not guilty to Count VII of the indictment pending against him, to guilty. Count VII charges the defendant with interstate transportation in aid of racketeering, in violation of Title 18, United States Code, Section 1952(a)(3). That violation carries a maximum penalty of 5 years imprisonment, a $10,000 fine, or both.

Should the Court accept the defendant's plea of guilty to Count VII of the indictment, the Government will move to dismiss the remaining counts of the indictment against the defendant, that is Counts I, V, VI, VIII, IX, XVI, XVII and XVIII. The Eastern District of Virginia further agrees not to prosecute MICHAEL LEE HAR-

VEY for any other possible violations of criminal law arising from the offenses set out in the indictment or the investigation giving rise to those charges.

It is also a part of this plea agreement that the Government will not oppose a continuation of the defendant's bond pending his sentencing on this plea, or oppose the defendant's request that he be allowed to turn himself into [sic] the United States Bureau of Prisons at the time a prison designation is made by the United States Bureau of Prisons, should this Court impose any period of incarceration. The Government also will not oppose the defendant's request for sentencing pursuant to Title 18, United States Code, Section 4205(b)(2) or for designation to a Level I Federal Correctional Institution.

This is the full and complete understanding of the parties.

the charged activities and that the fact that there were mitigating factors "does not clear the slate for his substantial involvement in this organization for the two or three years that he was involved at the level that he was involved." She then referred to the presentence report as a sufficient source for the court's consideration of the extent of Michael Harvey's involvement. She concluded by urging that because of the level of his involvement, Harvey "should be sentenced to a substantial term of years, including up to the maximum of five." In the presentence report considered by the court, there were references to drug smuggling and related activities by Michael Harvey in operations that occurred outside the Eastern District of Virginia as well as within it, specifically including acts in South Carolina.

In sentencing Harvey at the conclusion of this sentencing hearing, the court made a number of observations which, along with the sentence itself, are relevant to this appeal. Prefacing the imposition of sentence, the court stated that although it considered Harvey's involvement to have been a knowledgeable one, so that "normally [the court] would feel that a substantial jail sentence was warranted," that the court "also [felt] ... an obligation to society to try to salvage young people like you" and that for this reason the court would impose a split sentence. Thereupon the court gave Harvey a six-months active sentence with probation on conditions for the remainder of a five year term. The court then admonished Harvey in these words:

> Now, I want you to understand before you leave here today, that should you violate your probation or any of the conditions of it, and you come up for a revocation of probation, that you will probably wind up serving in a prison the balance of your sentence.
>
> I want you to also know that I have been very lenient with you here today.

And if you get back in drugs and ever come before another judge for sentencing, I can pretty well assure you that you are probably going to get the maximum term that is available.

> Now, you have an opportunity to turn your life around. And I am impressed that you are sincere, that you have new obligations in life, and that you want to measure up to these, but you won't be given any more opportunities in life to turn the corner and do right. And I hope you understand that before you leave here.

At no time during this sentencing proceeding was any direct question raised or any direct representation made by defense counsel, government counsel, the court, or Harvey about the possibility of further prosecution of Harvey in connection with past drug smuggling or distribution.

Harvey then served his six months active sentence. Within a few days after his release from prison, in May of 1983, he was arrested on charges contained in two counts (later expanded to four) of a multi-count federal indictment in the District of South Carolina. This South Carolina indictment originally charged Harvey, along with his brother Leon and several other defendants, in two counts of conspiracy to import and to distribute hashish, respectively, and later charged Harvey in two related substantive counts.

With trial on the South Carolina indictment pending, Michael Harvey made a motion in the Eastern District of Virginia for an order enforcing the plea agreement by enjoining his prosecution under the South Carolina indictment. The district court conducted two hearings on this motion. The first, on September 15, 1983, was devoted to questions of jurisidiction [2] and to identifying the issues; the second, on October 7, 1983, to receiving evidence and hear-

---

**2.** The Government contended that jurisdiction lay only in the District of South Carolina; Harvey, that it lay concurrently in both districts, but that the United States District Court for the Eastern District of Virginia was the more appropriate forum to interpret a plea agreement approved by that court. The court accepted Harvey's position. We agree that jurisdiction existed in both district courts.

ing argument on the intended reach of the plea agreement.

At the evidentiary hearing on October 7, the district court received evidence in the form of an affidavit by Assistant United States Attorney Tandy and live testimony by defense counsel Turner and DEA agent Mittica. The evidence was directed to the issue of whether the plea agreement, rightly construed, obligated the government not to prosecute Harvey under the pending South Carolina indictment. The court had previously identified that issue as one that invoked a combination of contract and constitutional fairness principles.

The government's position, essentially as advanced in the Tandy affidavit and in argument of government counsel, was simple.

The plea agreement, by its unambiguous terms, only (1) obligates "the Eastern District of Virginia" not to prosecute (2) in respect of "other possible violations of criminal law arising from the offenses set out in the indictment or the investigation giving rise to those charges." Only prosecutions meeting both of those criteria are therefore precluded. Here, conceding, for purpose of argument, that the second, "arising from" limitation is met, the first unambiguously is not. That first limitation plainly precludes only prosecutions "in" or "by" the Eastern District of Virginia, and the obligation thereby imposed on the government has therefore not been breached and specifically is not breached by the pending South Carolina prosecution. Never in the plea negotiations did Ms. Tandy make any representation that this

limitation obligated any unit of government but the Eastern District of Virginia; never did she indicate any intention to bind any unit of the government but her own district with respect to further "arising from" prosecutions. Had she intended to obligate any other federal district, she would have sought clearance from all, and this she had not done.

Harvey's position, as principally advanced in oral testimony by his attorney Turner and in argument of other counsel at the hearing, was equally simple.

Notwithstanding the admitted ambiguity of the "Eastern District of Virginia" reference, the understanding had by Turner and Harvey throughout was that, if executed, the agreement would "put behind him" all of Harvey's possible exposure to criminal liability for all violations "arising from" the general investigation leading to his indictment. The South Carolina indictment plainly charged violations arising from that investigation. This was now obvious both from a comparison of the two indictments,[3] and from considering the contents of the presentence report upon which sentence was imposed upon Harvey's guilty plea.[4]

Although it is true that Ms. Tandy never made any specific representation that she was authorized to bind other districts than her own to abstain from further "arising from" prosecutions, neither did she specifically caution that she had no such authority or that though she had it she did not purport to exercise it. To the contrary, in various ways, she manifested an intention, conformable to

---

**3.** In the 1982 Virginia indictment, Harvey was charged, *inter alia*, with conspiracy with his brother Leon and others to possess and distribute hashish from the Spring of 1980 through January 1981 (Count 16).

In the South Carolina indictment, Harvey was first charged with conspiracy with his brother Leon and others to import hashish from 1974 to the present (Count 1) and with conspiracy to possess and distribute hashish from 1974 to the present (Count 2). He was later charged with the substantive offenses of importing hashish in June of 1980 (Count 13) and possessing the same hashish to distribute (Count 14).

(The district court in *MacDougall* in fact dismissed Counts 2 and 14 on double jeopardy grounds related to the Virginia guilty plea.)

**4.** The Presentence Report contained a "Government's Version" of Harvey's involvement in drug-related offenses over a several year period. Its account ranged considerably beyond the offenses charged in the Virginia indictment, and specifically involved conduct later charged in the South Carolina indictment which resulted in successful double jeopardy pleas. *See* note 3, *supra.*

Turner's understanding, that the agreement being negotiated was one intended to "put behind him" all of Harvey's potential liability for all offenses "arising from" the general investigation then underway, which everyone involved, including Ms. Tandy, knew included activity in South Carolina that was later charged to Harvey. That Ms. Tandy knew of Harvey's potential exposure to South Carolina federal prosecution, and that she manifested an understanding to Turner that this too would be barred is corroborated to some extent by the testimony of DEA agent Mittica, testifying as an adverse witness. Under examination by counsel for Harvey, Mittica, the case agent on Harvey's Virginia indictment, conceded that based upon his contemporaneous discussions of Harvey's proposed plea agreement with Ms. Tandy, he, in counsel's words, "got the notion that she [Ms. Tandy] was hoping that Mr. Turner wouldn't ask her specifically about the coverage of the agreement."

On the basis of the evidence received and legal arguments advanced at the two hearings, the district court denied the motion. Conceding that it was "a painful experience ... to have to deny [Harvey] relief"; that when the court sentenced Harvey, it was in the "hope that he had criminal activity out of his life and criminal prosecutions"; and that "I personally hope the Government will nol-pros the case against him in South Carolina," the court nevertheless held that as a matter of law the "narrowly drawn" plea agreement did not bar the South Carolina prosecution. Pointing out that defense counsel was obviously experienced and knew "exactly what was going on," the court concluded that it must enforce the "very precise language" of the plea agreement as negotiated and "reduced to writing" by competent counsel. Specifically, the court interpreted the written plea agreement as unambiguously binding only the Eastern District of Virginia not to prosecute Harvey for further "arising from" offenses. Resting decision solely on this point, the court did not consider whether the South Carolina prosecution might also fall outside the range of the non-prosecution obligation because not concerned with violations "arising from" the general investigation to which the agreement referred.

This appeal was then taken, and while it was pending the South Carolina prosecution proceeded, following refusals by both district courts and this court to grant stays of the prosecution pending this appeal. By the time oral argument was heard in this appeal, the South Carolina prosecution had proceeded to final judgment of conviction against Michael Harvey on two of the four counts with which he was charged, two other counts having been dismissed on double jeopardy grounds growing out of the Virginia prosecution.

Following oral argument and submission of this appeal, we held decision in abeyance pending the filing of the record and briefs in Harvey's then pending appeal in *MacDougall* from his South Carolina conviction. Our concern was that the full relationship between the Virginia and South Carolina prosecutions might not have been as fully developed in the necessarily truncated plea-enforcement motion proceedings in the Eastern District of Virginia as it had been in the more comprehensive pre-trial and trial proceedings in the South Carolina prosecution, and that the record and briefs in that other appeal might provide a more complete and fairer basis for decision on the plea agreement issue. Additionally, we were aware that were Harvey to prevail in that appeal on his more fundamental double jeopardy plea respecting the two counts on which he was convicted, that would moot the essentially congruent plea agreement issue in this appeal.

As today's decision by this court in *MacDougall* indicates, Harvey's double jeopardy plea did not prevail on that appeal, so that his alternative claim of entitlement to comparable relief by enforcement of the plea agreement remains for decision. To that we now turn, aided to some extent by the fuller picture of relationships between the two prosecutions provided by the *MacDougall* record and decision.

## II

The question before us is narrowly one of interpretation of the plea agreement. There is no question that an agreement was reached—and here integrated in a written document—nor that defendant has fully performed by pleading guilty, so that he is entitled to an appropriate remedy if the Government has breached the agreement. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

The specific dispute is in turn narrowly confined to the nature of the Government's assumed obligation with respect to further prosecutions. Harvey says the agreement was that the Government should not—anywhere or by any prosecutorial force—prosecute him further for violations "arising from" the general investigation that led to the indictment under which he entered his guilty plea. The Government says that the agreement was only that he should not be further prosecuted for such violations by (or in) "the Eastern District of Virginia."

In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. *See generally* Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Calif.L.Rev. 471 (1978) (analyzing cases in these terms). But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. *See Mabry v. Johnson,* 467 U.S. at 509, 104 S.Ct. at 2548 (broken government promise that induced guilty plea implicates due process clause because it impairs voluntariness and intelligence of plea). Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *United States v. Carter,* 454 F.2d 426, 428 (4th Cir.1972).

That the resulting interpretive doctrine is an amalgam of constitutional, supervisory, and private law concerns does not mean, however, that it is without form. Some ordering principles and guidelines have clearly emerged. Those relevant to this appeal bear emphasis here.

Private law interpretive principles may be wholly dispositive in an appropriate case. For example, whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Such an approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, *see Santobello,* 404 U.S. at 261, 262, 92 S.Ct. at 498, and to the wider concerns expressed in the exercise of supervisory jurisdiction over the administration of federal criminal justice. *See Carter,* 454 F.2d at 428.

On the other hand, both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements. *See, e.g., United States v. Bowler,* 585 F.2d 851, 854 (7th Cir.1978) (plea agreement not appropriate context for "rigidly literal" construc-

tion of language); *Palermo v. Warden,* 545 F.2d 286, 295 (2d Cir.1976) (government invocation of restrictive contract principles "disingenuous"); *United States v. Crusco,* 536 F.2d 21, 26 (3d Cir.1976) (government's "strict and narrow interpretation of its commitment ... untenable"); *Correale v. United States,* 479 F.2d 944, 947 (1st Cir. 1973) (government held to "meticulous standards of both promise and performance"). This is particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement—for the same reasons that dictate that approach in interpreting private contracts. *See generally Restatement (Second) of Contracts* § 206 (1981).

As a necessary corollary, derelictions on the part of defense counsel that contribute to ambiguities and imprecisions in plea agreements may not be allowed to relieve the Government of its primary responsibility for insuring precision in the agreement. While private contracting parties would ordinarily be equally chargeable—so far as enforceability and interpretation are concerned—with their respective counsels' derelictions in negotiating commercial contracts, different concerns apply to bargained plea agreements. Unlike the private contract situation, the validity of a bargained guilty plea depends finally upon the voluntariness and intelligence with which the defendant—and not his counsel—enters the bargained plea. *Mabry,* 467 U.S. at 509, 104 S.Ct. at 2547. This necessary condition to effective waiver of constitutional rights can be found wanting not only because of the Government's derelictions in discharging its duty of fair bargaining, *see Santobello,* 404 U.S. at 261-62, 92 S.Ct. at 498, but also because of any independent (as well as Government-induced) dereliction of defense counsel amounting to ineffective assistance of counsel. *See Correale v. United States,* 479 F.2d at 949 (Coffin, C.J.) (that defense counsel's possible dereliction may constitute constitutionally ineffective assistance of counsel invalidating guilty plea, not a "relevant legal concern" in direct proceed-

ing in criminal case to vacate plea because of broken plea agreement); *cf. United States v. Society of Independent Gasoline Manufacturers,* 624 F.2d 461, 473 (4th Cir. 1979) (in interpreting disputed immunity agreement, court "not primarily concerned with the gauge of [defense counsel's] professional caution or responsibility").

Applying these principles here, we simply disagree with the district court's interpretation of the disputed plea agreement provision. We hold to the contrary that under those principles it was, first off, imprecise or ambiguous as a matter of law.

As the district court—accepting the Government's position—interpreted the critical reference to "the Eastern District of Virginia," it unambiguously identified the only prosecutorial agency bound not to prosecute, or the only geographical area within which the obligation not to prosecute existed (or possibly, perforce, both).

Of course the agreement literally said neither of these. The reference is literally only to the entity which is making the agreement on the Government's side: "the Eastern District of Virginia further agrees not to prosecute...."

Had the agreement said what it could easily have said, "the Government further agrees that defendant will not be prosecuted in the Eastern District of Virginia (or "by the office of the United States Attorney for the Eastern District of Virginia") ...," it would have said unambiguously what the Government contends it unambiguously said as actually written. But to state it here as it might so easily and most naturally have been stated reveals the ambiguity, in context, of what was actually said.

That it is at least plausible to read the reference as merely a careless imprecision in shifting from a purely formal reference to the Government as the contracting principal to an equally formal reference to the "Eastern District of Virginia" as the directly contracting agent for that same principal is borne out by other circumstances. The first is intrinsic to the written agreement.

The first statement of Government obligation in the agreement was in the form, "The Government will move to dismiss...." The disputed reference immediately followed: "The Eastern District of Virginia *further* agrees ..." (emphasis added). The next statement of obligation reverts to the form, "The Government will not oppose...."

The Government now seizes upon this very shift of references as emphasizing the limitation implied by the narrower form. But the shift cuts both ways. It could equally well be pointed out that just where the contracting party is identified in the broadest possible form, "Government," it is clear that the obligations being assumed—dismissal of counts and non-opposition to sentencing and custodial matters—were peculiarly the concern only of the directly contracting agency, the United States Attorney's office. On this reading, the various references to the specific contracting party in respect of particular obligations could plausibly have appeared as casual irrelevancies so far as the intended scope of obligation was concerned.

Other, extrinsic, circumstances reinforce the view that the disputed reference was at least ambiguous in context. If one thing is clear from the record, it is that both Harvey's counsel and Harvey unequivocally represented to the court at the sentencing hearing a firm belief that the agreement effectively ended Harvey's exposure to further prosecution for any drug-related offenses generally related to those for which he stood indicted. Despite the district court's later ruling that as a matter of law the agreement was more limited, the record also seems clearly to reflect a different understanding—precisely that of Harvey and his counsel—had by the court *at that critical time.*

In the face of the clear manifestations by Harvey and his counsel of their understanding, and the arguably similar manifestations by the court, the Assistant United States Attorney stood mute. We need not find or even speculate that this involved any breach of affirmative duty or deliber-

ate obfuscation by this official any more than we need speculate about the alternative possibility that Harvey's counsel, fully aware of the limited reach intended, was engaged in a risky sandbagging exercise. Laying aside as incapable of resolution both of those theoretical possibilities—as did the district court—we are left with what must be considered conflicting understandings on the part of both contracting parties at the time the plea agreement was approved and plea entered. This bolsters our view that the disputed reference in the plea agreement was one capable of producing just such conflicting understandings—that it was ambiguous in context.

There is further support for this assessment of contextual ambiguity producing, at the very least, honestly conflicting understandings. Both the negotiations leading to the plea agreement and in the presentence report on which the court acted plainly revealed that Harvey had been involved in closely related criminal conduct outside the Eastern District of Virginia which was potentially subject to prosecution outside that district. The interrelation between the conduct charged in the Virginia indictment and that later charged in the South Carolina indictment has now indeed been made even more clear by the dismissal in *MacDougall* of two of the counts against Harvey on double jeopardy grounds based on the Virginia guilty plea conviction. It seems perfectly plain from the record we review that both Harvey's counsel, Harvey, and apparently the district court, acted on the assumption that that conduct was specifically immunized by the agreement from further prosecution, though the Government now contends that it never was intended to be.

■ A final extrinsic consideration pointing to the contextual ambiguity of the disputed reference is found in settled plea bargaining law of this circuit. In *United States v. Carter,* 454 F.2d at 428, we held, in a critical decision, that though the Government negotiates its plea agreements through the agency of specific United States Attorneys—as necessarily it must—

the agreements reached are those of the Government. It is the Government at large—not just specific United States Attorneys or United States *"Districts"*—that is bound by plea agreements negotiated by agents of Government. Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that "agrees" to whatever is agreed to. Of course the Government may—and quite readily can—"agree" through its agents that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is limited territorially or temporally, or that the Government's obligation is otherwise qualified. But the mere fact that a particular agent, holding office in a particular district, and for a limited term of office makes the "agreement"—"agrees"—does not impose those limitations. In sum, under that settled circuit law, the proper way for plea agreements to express such limitations is as limitations on the Government's general obligation—a thing quite easily done—and not by technically inaccurate identifications of particular agents or agencies of Government as *the* contracting party.

In view of that settled principle, a reference to the contracting party that is at odds with the principle—such as that here in dispute—has obvious potential for confusion, whether intended or not. We need not believe that Harvey and his counsel actually read this disputed plea agreement with this settled circuit law in mind. It suffices that they were entitled so to read it and may reasonably have done so.

Having concluded that the disputed provision was ambiguous in the respect found dispositive by the district court, we further conclude that under the plea bargaining principles above stated the provision must be read against the Government. This does not mean that in a proper case it might not be possible to establish by extrinsic evidence that the parties to an ambiguously worded plea agreement actually had agreed—or mutually manifested their assent to—an interpretation as urged by the Government. But here, that evidence simply does not exist. On the contrary, as has been developed, the evidence shows at most an honest conflict of understandings and intentions that is best explained by the ambiguity itself.

■ We therefore hold that the district court erred in concluding that as a matter of law the plea agreement only prevented the Government from prosecuting Harvey in the Eastern District of Virginia for the offenses described in the plea agreement. We hold instead that it must be interpreted to prevent further prosecutions for such offenses anywhere and by any agency of Government. This of course requires that the district court's order denying the relief sought by Harvey's motion to enforce the plea agreement must be vacated, and we will so order.

There remains the question, however, of the further proceedings required to resolve the enforcement issue finally, and to that we turn.

### III

■ As indicated, the district court found the Government not in breach of the plea agreement solely on the basis that it was only barred from further prosecutions in the Eastern District of Virginia. Though we have now held that ruling erroneous, there remains the possibility that Harvey's prosecution in *MacDougall* was not precluded on the alternative basis that it was not "for violation of the criminal law arising from the offenses set out in the (Eastern District of Virginia) indictment or the investigation giving rise to those charges."

As indicated, the district court in the instant case did not address that issue because of its ruling against Harvey on the other ground. In this proceeding, the Government has conceded, but we think only for the purposes of argument, that Harvey's South Carolina prosecution in *MacDougall* did fall within that prong of the obligation not to prosecute further. In fairness to the Government, we think that must be considered still an open question on the present record.

The case might on that basis be remanded to the District Court for the Eastern District of Virginia to resolve that remaining, now dispositive, interpretive issue. In view, however, of the fact that Harvey's conviction in *MacDougall* has this day been vacated and that case remanded to the District of South Carolina for a new trial, we think that it is in that forum that the issue may now best be addressed by a district court as a matter of first instance. Aside from the fact that this will consolidate in one court the closely related matters now pending against Harvey, that court has necessarily gained a familiarity with the relationship between the Virginia and South Carolina prosecutions of Harvey in the course of considering his double jeopardy plea that will aid it in considering the closely related plea agreement issue.

We will therefore vacate the district court's order in the instant case and remand with directions to that court to transfer the motion to the United States District Court for the District of South Carolina for disposition by that court in conjunction with the remand for new trial of the charges against Harvey in *MacDougall.*

In its consideration of the transferred motion to enforce the plea agreement, the District Court of South Carolina will of course be bound by our determination that the agreement against further prosecution bound all agencies of the Government. It should consider the remaining interpretive issue in light of our general discussion here of the judicial process of interpreting plea agreements.

If the district court concludes that Harvey's prosecution in *MacDougall* was barred by the plea agreement as interpreted, it should of course grant the appropriate relief of a dismissal of the prosecution. If it determines that the plea agreement does not bar the prosecution, it may proceed with the new trial conditionally ordered in *MacDougall.*

VACATED AND REMANDED WITH INSTRUCTIONS.