53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Karim FARUQ, a/k/a Charles Williams, Defendant-Appellant.
 No. 94-5024.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 9, 1995.
Decided: May 4, 1995.
 
 ARGUED: Arcangelo Michael Tuminelli, Baltimore, MD, for Appellant.
 Robert Reeves Harding, Assistant United States Attorney, Baltimore, MD, for Appellee.
 ON BRIEF: Lynne A. Battaglia, United States Attorney, Katharine J. Armentrout, Assistant United States Attorney, Baltimore, MD, for Appellee.
 Before RUSSELL, WILKINSON and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Karim Faruq, a/k/a Charles Edward Williams, appeals his convictions and sentence for conspiracy to distribute and possess with intent to distribute heroin and cocaine, income tax evasion, money laundering, and distribution of heroin. Faruq argues that his plea agreement relating to an earlier charge prohibited the government from using much of the evidence it used to prosecute him in this case. He also argues that the district court committed clear error in determining his sentence. We find that Faruq's arguments lack merit, and we affirm his convictions and sentence.
 
 I.
 
 2
 Much of the factual and procedural history in this case is set out in this Court's unpublished opinion in United States v. Faruq, No. 92-5340 (Feb. 8, 1993) (Faruq I ). We restate those relevant facts below, with minor changes and additions to reflect the central issues in this case.
 
 
 3
 During late 1988 and early 1989, the United States Drug Enforcement Administration, the Baltimore City Police Department, the Baltimore County Police Department, and the Internal Revenue Service commenced an investigation into the alleged drug trafficking activities of Faruq. As a result of this investigation, on February 15, 1990, IRS agents and officers of the Baltimore City Police Department executed search and seizure warrants with regard to properties associated with Faruq, including his residences in Baltimore and Hollywood, California, an apartment rented in his girlfriend's name in Baltimore, and two safety deposit boxes. The searches yielded drug paraphernalia, a firearm, and $270,000 in cash.
 
 
 4
 On February 15, 1990, Faruq, a convicted felon, was charged in Maryland state court with the offenses of felon in possession of a handgun and felon in possession of drug paraphernalia. On April 11, 1990, a federal grand jury in the District of Maryland returned an indictment charging Faruq under 18 U.S.C. Sec. 922(g)(1) as a felon in possession of a weapon. Subsequent to the issuance of the federal indictment, the state charges were dismissed.
 
 
 5
 On June 25, 1990, the United States offered Faruq a written plea agreement for his inspection. Faruq objected to the agreement's requirement that he forfeit his parents' jewelry, and the government deleted this requirement. Faruq and federal and state prosecutors then executed the modified written plea agreement on June 25, 1990. The terms required that Faruq plead guilty to the federal weapons charge, that he forfeit property and currency amounting to nearly one-third of a million dollars, and that he refrain from contesting the forfeitures. In return, the government agreed that Faruq would qualify for positive sentence consideration for acceptance of responsibility under U.S.S.G. Sec. 3E1.1, that the government would recommend a sentence at the lowest end of the applicable guideline range, and that Faruq would remain free on bond pending sentencing. Faruq entered his guilty plea on January 25, 1990, and he remained free on bond. On January 11, 1991, Judge Herbert F. Murray sentenced Faruq to fifteen months imprisonment.
 
 
 6
 While Faruq was incarcerated, law enforcement authorities continued the drug and financial investigation of Faruq. On October 9, 1991, a grand jury in the District of Maryland returned a nine-count indictment in the instant case against Faruq and three others. The indictment specifically charged Faruq with eight counts, including conspiracy to distribute and possess with intent to distribute heroin and cocaine (counts 1 and 2); income tax evasion (counts 4, 5, and 6); money laundering (count 7); heroin distribution (count 8); and engaging in a continuing criminal enterprise based on the narcotics charges (count 9). A grand jury returned an essentially similar second superseding indictment on December 4, 1991.
 
 
 7
 On January 16, 1992, Faruq filed a motion to dismiss counts 1, 2, 4, 5, 6, 7, and 9 of the indictment, all the counts against him except count 8, which related to Faruq's alleged heroin distribution on September 27, 1990. Faruq contended that the counts were precluded by his June 25, 1990, plea agreement and by the Double Jeopardy Clause of the Fifth Amendment. Faruq specifically argued that paragraph (8) of the plea agreement prohibited the federal government from prosecuting him for any additional crimes arising from the searches on February 15, 1990, and that the charges in the instant indictment arose from those searches. The government contended that paragraph (8) simply clarified that the agreement does not control further investigations and that it relates only to the charges arising from the February 15 searches, i.e., the state charges of drug paraphernalia and firearm possession, and the federal charge of felon in possession of a weapon to which Faruq pled guilty.
 
 
 8
 After extensive evidentiary hearings on the motion, Judge Frank A. Kaufman entered orders on April 9, 1992, denying Faruq's motion and allowing the charges to proceed. Judge Kaufman found the agreement was "not in the slightest bit ambiguous and it means exactly what the Government says it means." Joint Appendix (J.A.) 615. Faruq appealed the district court's decision, and this Court affirmed the district court in an unpublished opinion in Faruq I. Finding the plea agreement "unambiguous on its face," we held that "[g]iven the thoroughness and apparent thoughtfulness of Judge Kaufman's findings of fact and conclusions of law, we cannot conclude as a matter of law that they were in error." Faruq I, slip op. at 6.
 
 
 9
 On June 15, 1993, a grand jury returned a third superseding indictment containing seven counts against Faruq alone, as the other defendants had either been convicted, pled guilty, or had their charges dismissed. This indictment included the same charges as the second superseding indictment but dropped the continuing criminal enterprise charge against Faruq. Before his trial based on this third indictment, Faruq filed a motion in limine seeking the exclusion of evidence that had been seized during the searches on February 15, 1990. He claimed that the language of the plea agreement precluded the use of the evidence. Judge Kaufman ruled that the agreement contained no such preclusion but granted Faruq a continuing objection to each piece of evidence admitted at trial that was seized during the searches.
 
 
 10
 Faruq's trial began on September 13, 1993. Much of the tangible evidence admitted at trial was obtained by the government during the searches and seizures on February 15, 1990. The jury found Faruq guilty as to all counts on September 29, 1993. On December 20, 1993, the district court sentenced Faruq to 385 months imprisonment as to counts 1 and 2, the conspiracy counts, with the lesser sentences on the remaining counts to run concurrently. The district court also imposed a fine of $75,000 and a five-year period of supervised release.
 
 II.
 
 11
 Faruq first contends that the district court erred in denying his motion in limine. He argues that the June 25, 1990, plea agreement includes promises, or is ambiguous and should be interpreted to include promises, that the United States would not use the evidence obtained from the February 15, 1990, searches in any subsequent prosecution of Faruq. His argument is similar to his claim that this Court addressed in Faruq I. There, this Court affirmed the district court's conclusion that the agreement did not contain any promises that the government would not institute further prosecution based on the seized evidence.[1] In this appeal, the same language in the plea agreement is at issue, namely paragraphs (5)(b) and (8). These provisions read:
 
 
 12
 (5)(b) It is further agreed that the States Attorney's Office will not reinstitute any charges arising from the search of February 15, 1990.
 
 
 13
 (8) This letter states the complete plea agreement in this case. There are no other agreements, promises, undertakings, or understandings between your client and this Office. Specifically, this agreement relates only to the charges arising from the search of February 15, 1990. It does not relate to any other investigation which law enforcement would undertake.
 
 
 14
 J.A. 267-68 (emphasis added).
 
 
 15
 In determining what promises the parties have made in a plea agreement, courts apply the fundamental rules and principles relating to contract interpretation. United States v. Harvey, 791 F.2d 294, 300 (4th Cir.1986); United States v. McIntosh, 612 F.2d 835, 837 (4th Cir.1979). Where the terms of the agreement are clear, and there is no indication that the government acted in an overreaching manner to obtain the plea, "the terms of the agreement should be interpreted and enforced accordingly." Harvey, 791 F.2d at 300. To the extent that the agreement contains ambiguity, "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant" for insuring precision in the agreement. Id. at 300-01. While the government is obligated to fulfill the promises it made in a plea agreement, Santobello v. New York, 404 U.S. 257, 262 (1971), defendants are not entitled to have promises read into their plea agreements because they claim that they believed the agreement included such promises, see United States v. Sutton, 794 F.2d 1415, 1423 (9th Cir.1986).
 
 
 16
 In denying Faruq's motion in limine, the district court reasoned that the government was correct in its assessment that Faruq's plea agreement did not contain any specific or implied promises regarding the subsequent use of evidence seized in the searches on February 15, 1990. The district court's conclusion followed from its earlier conclusion, which this Court affirmed, that the agreement did not contain any promises concerning whether the federal government could bring any subsequent charges against Faruq. This Court reviews de novo the district court's enforcement of a plea agreement when the enforcement depends on contract principles concerning the interpretation of unambiguous terms or other matters of law. See Harvey, 791 F.2d at 300. When the district court's decision relies on factual determinations for a finding of a breach of a plea agreement, this Court reviews the district court's decision for clear error. See United States v. Conner, 930 F.2d 1073, 1076-77 (4th Cir.), cert. denied, 502 U.S. 958 (1991).
 
 
 17
 At oral argument before this Court, Faruq stressed that the plea agreement at a minimum is ambiguous. Specifically, Faruq argued that paragraph (8) is unclear because it does not delineate exactly which charges are those "arising from the search of February 15, 1990." Although Faruq conceded that the government's interpretation is reasonable, he argued that his interpretation that paragraph (8) prohibits the subsequent use of the seized evidence is also reasonable. He contended that this Court should therefore consider the agreement ambiguous and should construe the agreement against the government.
 
 
 18
 Faruq's emphasis at oral argument supplements his alternative argument in his brief that the plea agreement is ambiguous because the parties testified before the district court that they had opposing views as to the meaning and import of paragraph (8). To support his contention, Faruq highlights testimonial evidence from the earlier proceeding in which he and his former attorney both testified as to their understanding that the plea agreement contained promises that the government would not file additional charges resulting from the February searches. Faruq also highlights the testimony of federal prosecutor Katharine Armentrout, in which she stated that she and Faruq's former attorney never discussed the meaning of paragraph (8).
 
 
 19
 In the earlier proceeding, however, the district court found that the government did not mislead Faruq or his former attorney in any way. The court expressly discredited Faruq's testimony at the hearing and found that the testimony of Faruq's former attorney was "largely conclusory" and indicated only what he believed Armentrout conveyed to him. The court instead credited the testimony of Armentrout and Howard Gersh, the state prosecutor, that paragraph (8) simply clarifies that the agreement contains no promises about additional investigations. These credibility determinations are uniquely within the province of the district court as the finder of fact, United States v. Harris, 32 F.3d 1262, 1270 n. 5 (4th Cir.1994); Pigford v. United States, 518 F.2d 831, 836 (4th Cir.1975); and we find that the district court's assessment of the testimony at the hearing is not clearly erroneous.
 
 
 20
 More importantly, the fact that two parties advance different interpretations of the terms of a plea agreement does not render the agreement ambiguous when the language of the agreement is unambiguous on its face. See Harvey, 791 F.2d at 300. At the time the parties executed the agreement, only three charges had been filed against Faruq as a result of the evidence seized in the February searches: the state charges of drug paraphernalia and firearm possession and the federal charge of felon in possession of a weapon. Contrary to Faruq's contention at oral argument, these charges are thus the only charges the plea agreement governs. The agreement is unambiguous because it contains no language stating that the United States promises not to institute further prosecution and no language stating that the government would not use the seized evidence in such subsequent prosecution. In fact, paragraph (8) expressly states that the agreement does not "relate to any other investigation which law enforcement would undertake." We thus agree with the district court and hold that paragraph (8) is unambiguous and does not contain any promises that the government would not use the seized evidence in any subsequent prosecution of Faruq.
 
 
 21
 Faruq also argues that the plea agreement "must be construed" as containing an implied promise prohibiting the use of the seized evidence because a narrow reading would be implausible given the considerable sacrifices and forfeitures he made in return for a guilty plea to a single weapons charge. In Faruq I, this Court found an analogous argument to be without merit when we recognized that the district court found several reasons that possibly encouraged Faruq's acceptance of the agreement:
 
 
 22
 [I]t avoided a trial in a matter in which the government had an "open and shut case"; it avoided the real danger that Appellant's criminal history would oblige the Court to go outside the sentencing guidelines; it enabled Appellant to remain free on bond; Appellant's family did not suffer forfeiture; and, finally, the "intangible" consideration that Appellant may have thought that he could placate the government's possible desire for other investigations into his affairs if he were to plead guilty.
 
 
 23
 Faruq I, slip op. at 6.
 
 
 24
 For these same reasons, we find that Faruq's alleged lack of consideration does not support the finding of an implied promise that the government would not use the seized evidence in a subsequent prosecution. In interpreting a plea agreement, we will not bind the government to promises it did not make, United States v. Fentress, 792 F.2d 461, 464-65 (4th Cir.1986); and no evidence demonstrates that the government made an express or implied promise not to use the evidence seized on February 15, 1990, in a subsequent prosecution. To interpret the agreement as Faruq contends would "strip the bargaining process itself of meaning and content." Id.
 
 III.
 
 25
 Faruq also asserts three challenges to the district court's determination of his sentence. In reviewing a sentence, "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e).
 
 A.
 
 26
 First, Faruq argues that the district court committed clear error in determining the weight of the drugs relevant to calculating his base offense level. This Court reviews for clear error the district court's calculation to establish the quantity of drugs used to determine the base offense level. United States v. Hicks, 948 F.2d 877, 881 (4th Cir.1991).
 
 
 27
 At trial, the government introduced evidence that Faruq was involved in several heroin transactions. The government focused on five of these transactions to establish Faruq's base offense level at 34, corresponding to three to ten kilograms of heroin. Of these five, Faruq challenges the quantities from the three transactions that comprised nearly all of the weight used to calculate his base offense level. Faruq objects to two of the quantities used to reach the total--one kilogram Vincent Newby bought from Faruq and five 200-gram amounts Foster Nwaba sold to Faruq--on the grounds that the evidence consisted of the "uncorroborated" testimony of Newby and Nwaba. Faruq attacks the credibility of Newby's testimony by emphasizing that the government recommended a reduced sentence for Newby in exchange for his cooperation. Faruq attacks Nwaba's testimony by stressing that Nwaba's testimony before the grand jury regarding his drug transactions with Faruq differed considerably from his testimony at trial.
 
 
 28
 Although Faruq claims that Newby's and Nwaba's testimony was "uncorroborated," their involvement in drug transactions with Faruq was supported by the grand jury testimony of Lisa Bess, a girlfriend of Faruq. The district court admitted a redacted version of Bess's testimony as substantive evidence at trial. Other than Faruq's general allegations attacking the credibility of Newby and Nwaba, Faruq offers no evidence to show that the two witnesses should not be believed. Given the district court's unique ability to make credibility determinations, see 18 U.S.C. Sec. 3742(e); United States v. Harris, 32 F.3d 1262, 1270 n. 5 (4th Cir.1994), we conclude that Faruq's allegations do not demonstrate that the district court committed clear error in accepting Newby's and Nwaba's testimony and in including their transactions in determining Faruq's base offense level.
 
 
 29
 Faruq also objects to a third quantity used to arrive at his base offense level--1.3 kilograms derived from converting $250,000 in cash recovered from Faruq's properties into heroin. The guidelines allow such conversions when the amount of drugs seized "does not reflect the scale of the offense." U.S.S.G. Sec. 2D1.1, comment. (n.12). This Court has authorized the conversion of cash into drug quantities for purposes of sentencing in United States v. Hicks, 948 F.2d at 882-83. In that case, we allowed the conversion even though the defendant contended that not all of the money seized from his home was from the sale of drugs. Id. at 882 n. 4.
 
 
 30
 Similarly in this case, Faruq argues that including the full amount of cash in the conversion was clearly erroneous because the government did not demonstrate that all the cash seized from Faruq was directly attributable to the sale of heroin. Faruq contends that some of the cash was attributable to his legitimate businesses because testimony at trial indicated that Faruq's cash businesses, including his promotions of rap entertainment acts, generated as much as $45,000 in cash a night.
 
 
 31
 The total amount of cash seized from Faruq during the February 15, 1990, searches was over $270,000. Although evidence at trial demonstrated that Faruq conducted legitimate businesses, the evidence also illustrated that Faruq's entertainment promotions did not generate revenues approaching the amount of money seized from Faruq. IRS agents used Faruq's own files and those of his accountant to construct a schedule received into evidence at trial, showing profits of $28,400 from his business in 1987, and $64,400 in 1988, followed by losses of $66,000 in 1989. Faruq's business dissolved around October 1989.
 
 
 32
 At the sentencing, the government noted that if the total net profit of $26,800 from the entertainment business were deducted from the cash recovered from Faruq, the conversion amount would be reduced only to 1.2 kilograms of heroin. This reduction would not affect his base offense level because the total quantity of drugs, including the actual drugs recovered, would still remain above three kilograms. We thus hold that the district court did not commit clear error in including the quantity converted from the seized cash in determining Faruq's base offense level.
 
 B.
 
 33
 Faruq also contends that the district court committed clear error in adjusting his offense level upward two levels on the basis of a handgun recovered during the February 15, 1990, searches.[2] Law enforcement agents recovered the gun in a safe containing cash and cocaine in an apartment rented by Sharmeil Hodge, Faruq's girlfriend. Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed." The notes to the guideline further provide that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, comment. (n.3).
 
 
 34
 In this case, law enforcement agents found the gun in a safe with $60,000 that the district court counted as drug proceeds. At trial, Tyrone Barnes testified that he personally accompanied Faruq to Hodge's apartment building in September 1990 and that Faruq returned from her apartment with a large quantity of heroin. Barnes also testified that Faruq lived in the apartment with Hodge prior to February 15, 1990, and that Faruq stated that the agents seized $60,000 of his money in the apartment. Additionally, the agents recovered drug distribution paraphernalia from Hodge's apartment on February 15, including various sifters, spoons, and plastic bags, all covered with either heroin or cocaine. IRS Agent Ronald Groncki also testified that agents recovered a triple-beam scale from Hodge's apartment, and Faruq's own drug expert admitted that a triple-beam scale is consistent with distribution, not personal use.
 
 
 35
 This Court reviews for clear error the factual determination for sentencing purposes of whether one possessed a firearm. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). Given the evidence presented at trial linking Faruq and his drug activities to Hodge's apartment, we conclude that the district court did not commit clear error in adjusting upward Faruq's sentence for his possession of the firearm.
 
 C.
 
 36
 Faruq finally argues that the district court committed clear error in adjusting his sentence under U.S.S.G. Sec. 3B1.1(a), which provides for a four-level upward adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Specifically, Faruq contends that the court committed clear error by relying on hearsay testimony of "incarcerated felons" and a government agent regarding Faruq's drug distribution. This Court reviews for clear error the factual determination of whether a defendant is a leader or organizer of a criminal activity. United States v. Melton, 970 F.2d 1328, 1334 (4th Cir.1992).
 
 
 37
 The government concedes that the government agent's testimony at the sentencing hearing was partially hearsay and partially recapitulation of trial testimony. The guidelines provide, however, that it is permissible to present hearsay evidence at sentencing. The guidelines state, "In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3; see also 18 U.S.C. Sec. 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense" which a federal court may consider in imposing an appropriate sentence).
 
 
 38
 In this case, the government utilized the agent's testimony to expand on a showing of leadership the government had sought to establish through the testimony of several witnesses at trial. Other than his general allegations, Faruq offers no evidence to contradict the government's evidence that he was a leader or organizer of drug activities. Given the testimony offered by the government and Faruq's lack of rebuttal evidence, we conclude that the district court did not commit clear error in adjusting upward Faruq's sentence four levels on its conclusion that Faruq was a leader or organizer under U.S.S.G. Sec. 3B1.1(a).
 
 IV.
 
 39
 For the foregoing reasons, we affirm the convictions and sentence of Karim Faruq.
 
 AFFIRMED
 
 
 [1]
 The government concedes that Faruq is not collaterally estopped from litigating the use of the seized evidence because it cannot sustain the burden of proving that the "precise issue or question [the government] seeks to preclude was raised or determined in the first action." Appellee's Br. at 16 n. 10 (quoting United States v. Davis, 460 F.2d 792, 796 (4th Cir.1972)). As the government recognizes, in this appeal, the issue is whether the government made any specific promises about the use of evidence seized on February 15, 1990; in the first case, the issue was whether the government made any promises about subsequent prosecution
 
 
 [2]
 To support his argument, Faruq relies on United States v. Vasquez, 874 F.2d 250 (5th Cir.1989). The 1989 decision in Vasquez is inapposite to this case because Sec. 2D1.1(b)(1) was amended in 1991. In Vasquez, the Fifth Circuit considered language in the guidelines that directed an upward departure if the defendant possessed a weapon "during the commission of the offense." Id. at 251. The 1991 amendment applicable to Faruq's sentencing deleted this phrase, and Sec. 2D1.1(b)(1) now requires only that the defendant possess the weapon. See U.S.S.G. Sec. 2D1.1(b)(1), amendment 394