825 F.2d 26
 Cecil Mayo HARTMAN, Petitioner-Appellee,
v.
W.D. BLANKENSHIP, Attorney General of the State of Virginia,
Respondents- Appellants.
Cecil Mayo HARTMAN, Petitioner-Appellant,
v.
W.D. BLANKENSHIP, Attorney General of the State of Virginia,
Respondents- Appellees.
 Nos. 87-7501, 87-7502.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 3, 1987.
Decided Aug. 3, 1987.
Rehearing and Rehearing En Banc Denied Oct. 13, 1987.
 
 Linwood T. Wells, Jr. (Mary Sue Terry, Atty. Gen., Thomas D. Bagwell, Sr. Asst. Atty. Gen., Richmond, Va., on brief), for respondents-appellants.
 Lamar W. Davis, Roanoke, Va., for petitioner-appellee.
 Before HALL and WILKINSON, Circuit Judges, and SMALKIN, United States District Judge, District of Maryland, by designation.
 SMALKIN, District Judge:
 This is an appeal from an order of the district court granting habeas corpus relief to the petitioner, who was convicted of multiple drug offenses on his pleas of guilty entered in a Virginia state court. He was sentenced to several concurrent 40-year terms and fined. At the time the pleas were entered, he was, as is the custom, sworn on oath and examined at length by the trial judge. During the course of that examination, petitioner acknowledged having agreed to and executed a written plea agreement that said the following with regard to sentencing:
 The Commonwealth will make no agreement as to sentencing on the charges to which the defendant is pleading guilty except that the sentence imposed ... shall run concurrently [with certain other sentences].[1]
 The agreement went on to bar prosecution for certain other actual or potential criminal charges. Also during the examination, the petitioner was informed of the maximum sentences imposable and was told that the trial judge could impose those maximum sentences. The following colloquy occurred as well:
 BY THE COURT: Under the agreement, the Commonwealth has agreed that it will make--that there is no agreement as to the sentencing and that the Commonwealth will not make a specific recommendation for punishment; is that correct?
 BY MR. BURKART: No, sir, that is not correct. I just--our--there is no agreement as to punishment with the exception that there are three (3) indictments and whatever punishment he can receive is on the first of the three (3) or we would run concurrent with the other two (2).
 BY THE COURT: Is that your understanding, Mr. Hartman?
 BY THE DEFENDANT: Yes.
 * * *
 * * *
 BY THE COURT: Now have any promises been made to you other than those that are contained in this agreement?
 BY THE DEFENDANT: That is all.
 The trial judge accepted the pleas, and the petitioner was convicted. Before sentencing, petitioner filed a motion to withdraw his guilty pleas and to change counsel. The trial court held a hearing on that motion, at which petitioner testified that he had yet again changed his mind, wished to withdraw the motion, and wished to stick both with his guilty pleas and original counsel. Accordingly, the trial judge let the pleas stand. Several months later, the matter came on for sentencing, and the prosecutor recommended a forty year prison sentence, which was imposed by the judge. So far as the record shows, not a word was said by petitioner or his counsel at the time of sentencing by way of objection to the prosecutor's recommendation or the trial judge's acceptance of it. Some two months later, in a motion to modify the sentence, the petitioner claimed for the first time that he had been misled as to the prosecutor's undertaking pursuant to the plea agreement. The petitioner claimed that the prosecutor, before the plea agreement was signed, had orally promised not to recommend a sentence of in excess of 25-30 years, and that he (petitioner) had relied upon this promise. At the hearing before the trial judge on the sentence modification motion, the petitioner read into the record a prepared written statement, as follows:
 Your Honor, I would like to be allowed to withdraw my guilty plea and request for a retrial, a dismissal, or to be taken under advisement. I was misinformed by Skip Burkhart [the prosecutor] and my two attorneys, Mr. Mundy and Mrs. Weinman, to go guilty. Mr. Burkhart in the presence of my two attorneys told me he would recommend 25 years totally, and Mr. Mundy told me he would ask for ten to 12 years and I would receive no more than 15 years totally.
 I stuck with the plea agreement. I did as I was advised; and, as a result, I was sentenced to 40 years in the state penitentiary. Then on the plea bargain, they changed it on me before I could get myself organized. I was thinking ten to 25 then on the plea bargain, no recommendation. I did not have time to think and I was totally confused.
 On the spur of the moment, I signed the plea bargain; but earlier Mr. Mundy advised me I would be able to change my plea. And even after the trial, Mr. Mundy along with Mrs. Weinman told me and my father that the Court said I would be able to change my plea. Then on May the 21, 1985, I was arrested due to capias saying I failed to meet requirements of bond.
 I asked my pre-sentence report officer, Mr. Newberry, if he had revoked my bond and he said no. Also Mr. Burkhart told Captain Huff to tell me he had nothing to do with the bond being revoked. So on May 28, 1985, I was going to go change my plea and Counsel; but I was told that I could not change my plea and to stay with my Counsel, Mr. Mundy and Mrs. Weiman [sic].
 Also Mr. Mundy and Mrs. Weinman can testify I have pled my innocence from day one. I have proof of my innocence that will free me, and I pray the Court will allow me to establish this. With all respect, thank you, Your Honor.
 The state trial judge made no explicit findings of fact on whether the prosecutor had in fact promised to recommend only 25-30 years, nor did he make any explicit ruling on the question of the effect of any such promise, if made, on the voluntariness of the guilty pleas. After the prosecutor, in argument not under oath, recounted his version of the events preceding the execution of the plea agreement, the trial judge simply found that the petitioner had shown no grounds for relief on the sentence modification motion, and he denied it.[2]
 After exhaustion of state remedies, which produced no further hearings or findings of fact in the Virginia courts, petitioner filed for federal habeas corpus relief. The district judge granted such relief on the record before him, consisting of the record of the proceedings described above, without conducting an evidentiary hearing. The district judge found that the prosecutor had in fact made an oral promise not to recommend a sentence exceeding 25-30 years. He also found that the petitioner understood the bargain to be that a 25-30 year recommendation would in fact be made, that the written agreement did not bar inquiry into the parol matters preceding its execution, and that the petitioner's reliance on his understanding of the prosecutor's undertaking (which was not what, in the event, materialized) rendered the plea involuntary. Because only voluntary guilty pleas may stand, and because breached plea agreements render a plea involuntary, see Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the district judge granted petitioner the writ of habeas corpus, requiring trial or resentencing. We reverse.
 Guilty pleas, resulting from plea bargaining, are a fact of life in the criminal law system of this country, as the Supreme Court has recognized. Blackledge v. Allison, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977). In order for the criminal justice system to function, in light of the huge input volume and the scarce resources for processing it in the time demanded by the Sixth Amendment and speedy trial statutes, plea bargaining is essential. As in the case of contracts generally, the parties' agreement must be accorded some substantial measure of finality; otherwise, a disaffected party, unhappy with what his bargain has bought for him, could easily supplant the order of a concluded agreement with the chaos of a post-factum reconfiguration of the bargain along lines that, with the advantage of hindsight, are more favorable to him. The passing of sentence is often thought to trigger remorsefulness. If, as in this case, the remorsefulness is not aimed at the underlying criminal conduct, but at the deal that the defendant accepted, the result is an attempt to impeach the guilty plea. To forestall this, both federal and state courts conduct extensive examinations of the pleader on oath and require acknowledgement of any written plea agreement in open court, after oral explanation of its terms. All of that occurred in this case. What also occurred, after several months of silence, including silence at the actual sentencing, was an attempt to impeach the plea agreement and the in-court colloquy by evidence of an unwritten prosecutorial "promise."This Court has recognized that extrinsic evidence may be helpful in the interpretation of an ambiguous plea agreement. United States v. Harvey, 791 F.2d 294, 300 (4th Cir.1986). But Harvey also recognized the universal rule that parol is inadmissible to vary the terms of an unambiguous agreement. Id. Here, the plea agreement as written, and as reiterated in open court, was plain and unambiguous. It said nothing that prevented the prosecutor from recommending any length of sentence. It simply provided that there was no agreement as to sentence. Obviously, if there had been an oral agreement before the plea agreement was signed, familiar principles of contract interpretation would bar consideration of it, if the parties' written agreement was intended to be the final, exclusive expression of their bargain. Cf. U.C.C. Sec. 2-202.
 It is true that the record made in the arraignment proceeding is not invariably immune from post-conviction attack. Blackledge v. Allison, 431 U.S. at 74-75, 97 S.Ct. at 1629-30. What is needed to surmount the "imposing" barrier of finality inherent in the arraignment record itself is a showing that the plea was, on account of "misunderstanding, duress, or misrepresentation by others," so involuntary as to make it "a constitutionally inadequate basis for imprisonment." Id.
 In the present case, the district judge held no evidentiary hearing. Instead, he relied on the record established in the state trial court, on the sentencing modification motion. Relying on that record, the district judge concluded, although not specifically so finding as a fact, that the prosecutor had acted in such a way as to lead petitioner reasonably to conclude that a 25-30 year recommendation would in fact be made. The "evidence" of the prosecutor's statements before the signing of the plea agreement is found only in his unsworn argument on the sentencing modification motion. It is instructive to set it out in full:
 THE COURT: Mr. Burkhart, had you made some promise that the limitation of penitentiary sentencing would be no more than 15 years?
 MR. BURKHART: Your Honor, that is incorrect. Prior to his plea on May 13, Marshall Mundy and Ellen Weinman requested that I see Mr. Hartman in the jail. I told them that I don't normally do that, I did not want to do it, and would not do it outside their presence.
 They indicated to me that Mr. Hartman was interested in knowing what the other Defendants got in these particular cases. I went over to the jail. As I had already told Mr. Mundy and I told Mrs. Weinman, I said regardless of a pre-sentence report I would recommend anywhere between 25 and 30 years. I did not consider myself bound to that recommendation because I did not have a pre-sentence report, and I wanted to see a pre-sentence report before I did make a recommendation.
 Mr. Mundy and Mrs. Weinman indicated to Mr. Hartman what the other Co-Defendants were getting--many had already been sentenced as has been run through here this morning--indicated what some of the other Co-Defendants were getting and told Mr. Hartman that they were going to urge the Court to go with the lower scale.
 I told him that I was going to recommend at least 25 to 30. There was no promise to Mr. Hartman concerning any recommendation on the part of the Commonwealth. There was no promise to Mr. Hartman as to what the Court would impose. It was left with the understanding--and the Court can question Mr. Mundy or Mrs. Weinman--that it would be up to the Court; that the only promise I had was that it would be no more than 80 years.
 But there were no promises made to him, and I think the Court in accepting his plea also went over that with Mr. Hartman whether there were any promises other than the plea agreement; and there were no others. But I did tell him that prior to seeing a pre-sentence report that I would be recommending at least 20 to 30 years. In fact, Mr. Mundy indicated to me that he was surprised that I was saying at least as much as 30 because I had told Marshall 25 or 30; but I had to see a pre-sentence report.
 He indicated he was surprised when I said that I recommend at least 30, and I told him that was my position. And I told him also that I was sure when we came into sentencing that Mr. Mundy and Mrs. Weinman would put on whatever evidence Mr. Hartman wanted and would argue for a lesser sentence, probation, or whatever he wanted, but told him it was up to the Court; and there were no promises.
 THE COURT: Mr. Mundy, do you have anything to add?
 MR. MUNDY: No, Your Honor; I think that's a fair and accurate summarization of the indication that we had in the jail.
 THE COURT: Mrs. Weinman, do you have anything you wish to add?
 MRS. WEINMAN: No, sir.
 In finding that the prosecutor had given petitioner reason to believe that a recommendation not in excess of 30 years would be given, the district court must have concluded that the words "regardless of a pre-sentence report" were taken by petitioner as being a promise that no matter how good or how bad the pre-sentence report showed his conduct to have been, 25 to 30 years would be the maximum recommendation. This ignores the prosecutor's repeated denials that any promise had been made as to a sentencing recommendation, and his assertions that any recommendation would be at least 20-30 years, and anywhere up to 80. The prosecutor, in the excerpt set out above, repeatedly emphasized that there were no promises made as to a recommendation, an assertion that is fully borne out by the written plea agreement and the plea colloquy. In fact, the absence of any promise as to recommendation vel non in the written agreement is not mere inadvertence. The agreement as drafted said that the prosecutor would make no recommendation; the word recommendation was lined out, and the word agreement was interlineated by hand before execution, and initialed. In short, there simply was no promise as to a recommendation in the executed plea agreement, and a contrary finding is clearly implausible in the light of this record viewed in its entirety. Anderson v. City of Bessemer, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).
 The district judge, in finding that a promise had been made and that "the circumstances in this case suggest that at the time of the plea Hartman was confused about the sentencing recommendation," apparently relied almost exclusively on the prepared text that petitioner read to the state trial judge at the sentence modification hearing. No state court ever made a finding that that "testimony" was credible, nor did the district court hold any independent hearing upon which to determine its credibility. Petitioner's statement is contradicted by the prosecutor's statement, the written plea agreement, and the arraignment colloquy. In fact, the petitioner's self-serving statement is of extremely dubious reliability, largely because of what it conveniently omits. It seeks to explain the petitioner's "confusion" on the basis that "[O]n the [written] plea bargain, they changed it on me before I could get myself organized. I was thinking ten to 25 then on the [written] plea bargain, [there was] no recommendation. I did not have time to think and I was totally confused." Petitioner's statement does not explain why: (1) the petitioner's confusion did not dispel in the slightest during the arraignment, when he was specifically asked about unrecorded promises; (2) his confusion did not dispel at sentencing when the prosecutor recommended 40 years, far in excess of what petitioner "thought" the recommendation would be; (3) it did not dispel when he actually received a 40 year sentence; or (4) it did not dispel during the several months between sentencing and the motion to modify. In short, it would simply be clearly erroneous, see Anderson v. City of Bessemer, for a federal court to conclude, on this record, that petitioner remained in a state of confusion until it dawned on him, several months after sentencing, that the prosecutor had breached an oral promise. Instead, the record taken as a whole plausibly supports only the conclusion that the petitioner's "confusion" is a product of his desire to get out of the bargain he in fact made, as evidenced by his written agreement and the colloquy at arraignment.
 Had the state courts made explicit findings of fact, fairly based on the record before them, both this Court and the district court would have been bound to accord them presumptive weight, given the important policy considerations precluding de novo determinations of fact on federal collateral review. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In this case, what state findings there are, based on the record of the sentencing modification hearing, implicitly reject petitioner's attack on the validity of the plea. See footnote 2, ante. To the extent that the district judge rejected those implicit findings in his own explicit or implicit findings (i.e., the record "suggests" petitioner's confusion), he erred under Sumner v. Mata.[3] To the extent that the district judge independently found the facts, those findings are clearly erroneous under the record as this Court reads it. In short, there are no findings adequately supported by a record generated anywhere demonstrating that petitioner has overcome the imposing barrier to impeachment of a written plea agreement, acknowledged in open court, by evidence of prior oral promises that "confused" him or otherwise rendered the plea involuntary in the constitutional sense. Therefore, we reverse the district court's grant of the writ of habeas corpus, and we remand, with directions to dismiss the petition.
 REVERSED AND REMANDED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 1
 I cannot agree with the majority's conclusion that the petitioner has failed to overcome the barrier to impeachment of a written plea agreement. In my view, the district court properly concluded that the oral inducements of the prosecution rendered petitioner's guilty plea involuntary. I, therefore, cannot accept the majority's conclusion that the district court erred in granting petitioner's writ of habeas corpus.
 
 
 2
 The district court properly considered parol evidence in examining whether the plea agreement was induced by unfair promises. Although the integrity of the plea bargaining process requires that written agreements be given great weight, plea agreements are not subject simply to strict contract interpretation. United States v. Carter, 454 F.2d 426 (4th Cir.1972). The courts can, and must, examine any facts or circumstances that could indicate an underlying constitutional deficiency in the process. In this instance, the district court specifically found that the state made enforceable promises to the petitioner regarding a sentencing recommendation based upon the undisputed statements of the prosecutor himself. The district court further found that the prosecutor's recommendation of forty years constituted a violation of the promise under which the petitioner entered his guilty plea. That determination has ample support in the record.
 
 
 3
 At the state sentence reduction hearing, the prosecutor three times in open court stated that he had told the petitioner he would recommend between 25 and 30 years. The fact that the prosecutor did not consider himself bound by the statements is not dispositive of the issue. The question is whether the evidence tends to show that the petitioner reasonably believed that he had bargained for a sentencing recommendation of 25 to 30 years.[1]
 
 
 4
 In concluding that there was an enforceable promise, the district court clearly made findings of fact and based its conclusion upon those facts.[2] I am unable to see how the district court's findings are clearly erroneous under the principles set forth in Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We cannot reverse the district court even though convinced that we would have weighed the evidence differently if the district court's account of the evidence is plausible in light of the record viewed in its entirety. Under the circumstances, the district court's findings are more than plausible.
 
 
 5
 In my view, the district court correctly concluded that the prosecuting attorney did induce the petitioner to enter into the plea agreement by a promise to recommend no more than thirty years. The prosecutor then breached this promise. The guilty plea must be regarded as involuntary and cannot stand. I would affirm the judgment of the district court. Accordingly, I respectfully dissent.
 
 
 
 [1]
 Recommendation was typed, but lined through. Agreement was handwritten instead and initialed, a fact of some consequence, as will later appear
 
 
 [2]
 This Court assumes, for the purposes of its analysis, that, had the trial judge found petitioner's plea constitutionally involuntary, he would not have found that it was "compatible with [the] public interest" to let the sentence stand. Thus, the trial judge implicitly resolved the facts against the petitioner and implicitly found no constitutional infirmity in the pleas. This second implicit finding is, at base, also a finding of fact. Marshall v. Lonberger, 459 U.S. 422, 431-32, 103 S.Ct. 843, 849-50, 74 L.Ed.2d 646 (1983)
 
 
 [3]
 We note that the district judge did not identify any statutory impediment to according presumptive weight to the state court's findings, explicit or implicit, under 28 U.S.C. Sec. 2254(d). See Sumner v. Mata, 449 U.S. at 552, 101 S.Ct. at 771
 
 
 [1]
 The record also discloses that the petitioner had earlier attempted to withdraw his guilty plea when he became aware that the plea agreement did not include the recommendation he believed was promised him. When petitioner filed the motion to withdraw his guilty plea and substitute counsel, his bond was revoked and he was again incarcerated. Petitioner thereafter appeared in court and abandoned his motion to withdraw the guilty plea and substitute counsel. He was then continued on bond and released from custody. At that time the state court judge admonished the petitioner to listen to his attorneys and informed him that if he caused any other delays, he would be picked up again and his bond would be cancelled. This evidence strongly suggests that the petitioner was confused about the sentencing recommendation
 
 
 [2]
 The majority assumes, for purposes of its argument, that the trial judge, at the sentence reduction hearing, made implicit findings of fact that there was no constitutional infirmity in the plea bargain (p. 28 n. 2) and that the district court rejected those implicit findings and made findings of its own which are clearly erroneous. However, in my view the trial court made no finding of fact, implicit or explicit, regarding the validity of the plea agreement. Indeed, the trial court stated that it had no jurisdiction as to the issue of the acceptance of the plea but even if it did have jurisdiction, it did not believe the circumstances justified withdrawal of the guilty plea at that late date after sentencing. I believe that anything beyond the trial court's recognition of the jurisdictional defect is dicta and cannot be viewed as a finding of fact