**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4123

ERNEST MELVIN TUCKER, a/k/a Sonny
Tucker,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
Irene M. Keeley, District Judge.
(CR-95-11)

Submitted: January 30, 1998

Decided: November 17, 1998

Before WIDENER, MURNAGHAN, and MICHAEL,
Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

S. Sean Murphy, Morgantown, West Virginia, for Appellant. William
D. Wilmoth, United States Attorney, Thomas G. Mucklow, Assistant
United States Attorney, Martinsburg, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ernest Melvin Tucker pled guilty to being a felon in possession of a firearm, 18 U.S.C.A. § 922(g)(1) (West Supp. 1997) (Count 8); using or carrying a firearm during a drug trafficking crime, 18 U.S.C.A. § 924(c) (West Supp. 1997) (Count 18); and possession of crack cocaine with intent to distribute, 21 U.S.C.A.§ 841 (West 1981 & Supp. 1997) (Count 35). The district court imposed a sentence of 120 months on Count 8 (the statutory maximum), a concurrent sentence of 348 months on Count 35, and a consecutive 60-month sentence on Count 18. Tucker appeals this sentence, contending that the district court erred in cross-referencing to the homicide guideline pursuant to U.S. Sentencing Guidelines Manual§ 2K2.1(c)(1)(B) (1995), and that the government breached the plea agreement by arguing for application of the cross-reference. For the reasons explained below, we find that the government breached the plea agreement. We vacate Tucker's sentence and remand for resentencing.

In November 1995, Tucker was convicted in state court of hiring two men to rob and murder a rival pawnshop dealer in August 1994. Tucker supplied the firearm with which the murder was committed. While Tucker's murder trial was in progress, he was charged with federal drug and firearms charges alleged to have occurred in the summer and fall of 1994. Tucker's plea agreement provided that "[p]ursuant to Sections 6B1.4 and 1B1.3 [Application Note 1] of the Guidelines, the parties hereby stipulate and agree that the total relevant conduct of the defendant would be 1086.70 grams of cocaine base, also known as crack."

In calculating Tucker's offense level, the probation officer placed Count 8 and Count 35 in separate groups. For Count 35 (the drug offense), the offense level was 36. For Count 8 (the felon in possession offense), the base offense level of 24 was enhanced by one level

2

because Tucker illegally possessed at least four firearms.* See U.S. Sentencing Guidelines Manual § 2K2.1(b)(1)(A) (1995). More significantly, the probation officer also recommended cross-referencing to the homicide guideline because Tucker had used a firearm in another offense which resulted in a death. See USSG§ 2K2.1(c)(1)(B). The cross-reference provides, in pertinent part:

> If the defendant used or possessed any firearm . . . in connection with the commission of another offense, or possessed or transferred a firearm . . . with knowledge or intent that it would be used or possessed in connection with another offense, apply--

> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above; or

> (B) if death resulted, [apply] the most analogous offense guideline from Chapter Two, Part A, Subpart I (Homicide), if the resulting offense level is greater than that determined above.

Application of the cross-reference raised Tucker's offense level to 43. With a multiple count adjustment of one level, see USSG § 3D1.4, and a three-level adjustment for acceptance of responsibility, see USSG § 3E1.1, Tucker's final offense level was 41. The probation officer also recommended that Tucker be sentenced as a career offender, which placed him in criminal history category VI but did not change his offense level. The recommended guideline range was 360 months to life.

A few days before his sentencing hearing, Tucker moved pro se to withdraw his guilty plea on the ground that his plea was not knowing and voluntary because his previous attorney, Mr. Pool, had assured him that he would be sentenced to no more than "20 years and some

_____

*The indictment charged that Tucker possessed a Marlin rifle in the summer of 1994 (Count 8), a Remington shotgun in the summer of 1994 (Count 14), a .380 Lorcin pistol in November/December of 1994 (Count 49), and a 9 mm pistol in December 1994 (Count 50).

3

change." At sentencing, the district court denied the motion, finding among other things that Tucker acknowledged at the Rule 11 hearing that his attorney had informed him that the guilty plea exposed him to as much as forty-five years imprisonment.

In a written sentencing memorandum filed shortly before sentencing, defense counsel argued that Tucker was not a career offender and also objected to the application of USSG § 3D1.4 and the cross-reference to the homicide guideline. He asserted that the cross-reference should not apply because the government had not shown that the firearm involved in Count 8 had been used in connection with the felony murder. At sentencing, however, the government argued for application of the cross-reference, and the district court decided that it should be applied. The court also found that Tucker's argument concerning the multiple count rules was moot and that he was not a career offender. The court found that the guideline range remained at 360 months to life and imposed a total sentence of 408 months.

We first address Tucker's claim that the government breached the plea agreement by arguing at sentencing that the cross-reference should be applied after previously stipulating in the plea agreement that Tucker's "total relevant conduct" was 1086.7 grams of crack. When a promise or agreement by the prosecutor is part of the inducement for a guilty plea, that promise must be fulfilled. See Santobello v. New York, 404 U.S. 257, 262 (1971). Because Tucker did not claim in the district court that the agreement had been breached, our review is for plain error. See United States v. Olano , 507 U.S. 725, 732 (1993) (relief available for unpreserved error if error is plain, affects substantial rights, and seriously affects fairness, integrity, or public reputation of judicial proceedings). Breach of a plea agreement may be plain error, see United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997), but the defendant bears the burden of showing that the error has affected his substantial rights. See United States v. Hastings, 134 F.3d 235, 240 (4th Cir.), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3758 (U.S. May 26, 1998) (No. 97-8732).

The government asserts that the stipulation referred only to Tucker's "drug relevant conduct," and points to a letter from the government to Tucker's attorney which stated that the government "would stipulate that the drug relevant conduct would be 1086.70 grams of

4

cocaine base." However, extrinsic or parol evidence is not admissible to vary the terms of an unambiguous agreement. See Hartman v. Blankenship, 825 F.2d 26, 29 (4th Cir. 1987).

At the Rule 11 hearing, the government attorney read without qualification the stipulation concerning Tucker's relevant conduct and represented that the written agreement was the entire agreement between the parties. Even before that, responding to Tucker's complaints about the quality of representation he had received, Tucker's attorney told the court that, after the plea agreement was negotiated, he had given Tucker "his breakdown based on the sentencing guideline manual of where he would fall based upon the relevant conduct in this particular matter." The attorney also stated:

> There was a felony possession gun count also which[the government attorney] and I discussed and we believed jointly would be merged in the 924(c) count and that would not expose Mr. Tucker to any further exposure over and above the 5 year minimum mandatory that the Court would impose.

The district court also questioned Tucker about his willingness to enter into the plea agreement, and had the following exchange with him:

> THE COURT: Look at Paragraph 8. do you see that there is a stipulation there that the total relevant conduct of the defendant would be 1,086.70 grams of cocaine base also known as crack?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. Now, did you and Mr. Pool discuss that number and what that would do to you in terms of your guideline level?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. So that is the amount of relevant conduct that you and the Government have agreed to if I accept this plea.

5

At no time did the government say that the term "total relevant conduct" meant only "drug relevant conduct," as it now claims. At no time was Tucker informed that the murder he had procured with an illegally possessed firearm might be part of his relevant conduct. The term "total relevant conduct" is unambiguous, and thus the government cannot limit its scope after the fact by the use of parol evidence. It is clear also that Tucker's plea was induced, at least in part, by the government's agreement to stipulate to certain relevant conduct. Subsequently, the government argued vigorously at sentencing that the murder should be included as relevant conduct through application of the cross-reference, with the result that the offense level was increased substantially.

We are persuaded that the plea agreement required the government to take no position on the probation officer's recommendation that the cross-reference be applied. The district court would have been free to decide whether the recommendation was correct and to apply the cross-reference if it saw fit, see USSG § 6B1.4(d), p.s. (sentencing court not bound by stipulations), but Tucker would have received the benefit of his bargain.

For the reasons discussed, we are constrained to vacate the sentence and remand for resentencing. Accordingly, we do not decide whether the district court's application of USSG § 2K2.1(c)(1)(B) was correct. We note that, if on remand the district court determines that the murder was part of the relevant conduct for the instant offense, three criminal history points should be deducted from Tucker's criminal history score. See USSG § 4A.12(a)(1), comment. (n.1). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

6