PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM THOMAS DAVIS,

*Defendant-Appellant.*

No. 11-6301

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Senior District Judge.
(5:08-cr-00021-FPS-JSK-1)

Argued: March 23, 2012

Decided: July 23, 2012

Before DAVIS and DIAZ, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge for
the Western District of Virginia, sitting by designation.

Affirmed by published per curiam opinion. Senior Judge
Kiser wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** Carl E. Hostler, PRIM LAW FIRM, PLLC, Hurricane, West Virginia, for Appellant. David J. Perri, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West

Virginia, for Appellee. **ON BRIEF:** William J. Ihlenfeld, II, United States Attorney, Wheeling, West Virginia, for Appellee.

## OPINION

PER CURIAM:

William Davis pleaded guilty to possession of a firearm by a convicted felon and received a fifteen-year mandatory-minimum sentence under the Armed Career Criminal Act ("ACCA"). Both in his plea agreement and at his plea hearing, Davis was advised incorrectly that he faced a maximum sentence of only ten years. Davis contends that this error constitutes a breach of his plea agreement and asks us to order that he receive the ten-year sentence described incorrectly as his statutory maximum. Davis also challenges the district court's conclusion that he qualified for the ACCA sentence enhancement. In response, the government seeks to enforce the appeal waiver found in Davis's plea agreement.

We hold that the failure to properly advise Davis of his statutory maximum sentence was not a breach by the government. Under these circumstances, however, we are unable to conclude that Davis knowingly and intelligently waived the right to appeal his fifteen-year sentence. We therefore decline to enforce Davis's appeal waiver and proceed to consider his alleged sentencing errors. Finding no merit in those claims, we affirm.

I.

William Davis was charged in a one-count information with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The information listed three prior state-court felony convictions. Davis entered into

a written plea agreement with the government in which he agreed to plead guilty to the one-count information. Davis also waived the right to appeal his sentence or to challenge it in a collateral attack. In exchange, the government agreed to (1) concur in a recommendation by the probation office regarding a reduction for acceptance of responsibility, (2) recommend an additional one-level reduction if Davis provided timely information regarding his own and others' involvement in the offense, and (3) recommend a sentence at the low end of the applicable guidelines range. J.A. 57.

Davis's plea agreement, however, misstated his maximum statutory sentence. Under the ACCA, a defendant who violates § 922(g) and has three prior convictions for a violent felony or serious drug offense is classified as an armed career criminal and faces a fifteen-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1). Davis's plea agreement failed to advise him of the potential ACCA sentence enhancement he would face if the court designated him an armed career criminal. Instead, the agreement stated that "[t]he maximum penalty to which the defendant will be exposed by virtue of his plea of guilty . . . [is] imprisonment for a period of *(10) ten years*." J.A. 56.

Despite misstating Davis's statutory maximum, the plea agreement advised that the district court had the final say regarding his sentence. The government also expressly disclaimed any "representations whatsoever . . . as to what the final disposition in this matter should and will be." *Id.* 57. And after summarizing the government's obligations, the agreement advised that "the Court is *not* bound by these sentence recommendations, and that the defendant has *no* right to withdraw a guilty plea if the Court does not follow the sentencing recommendations." *Id.*

The mistake in the plea agreement was compounded during the plea hearing, where the government and the court misadvised Davis regarding his potential maximum term of impris-

onment. First, while summarizing the terms of the plea agreement, the government again told Davis that the maximum term of imprisonment was ten years. Next, after explaining the elements of the § 922(g) charge, the court stated that "[t]he maximum sentence to which you would be exposed by statute in this matter would be not more than 10 years incarceration." *Id.* 32. The court specifically asked Davis, "And do you understand that on the individual, one-count information, you cannot in any event receive a greater sentence than the statutory maximum that I have just explained to you?" *Id.* 34. Davis responded that he understood.

Later in the hearing, the court advised Davis that his prior criminal history could potentially affect his sentence. Davis acknowledged that the court was unable to determine his exact sentence until it received the presentence report and that his sentence might be enhanced based on his criminal history. At the conclusion of the hearing, the court accepted Davis's guilty plea, concluding that he was competent, that he was pleading guilty freely and voluntarily, and that the plea was supported by a factual basis.

In the presentence report, the probation officer recommended that the court sentence Davis as an armed career criminal. The report indicated that Davis had prior convictions for three violent felony offenses and therefore qualified as an armed career criminal under the ACCA. The convictions included the three offenses listed in the information—a February 1993 burglary conviction in West Virginia, a July 1993 aggravated burglary conviction in Ohio, and March 2000 convictions for attempted breaking and entering and conspiracy to commit breaking and entering in West Virginia. Applying the ACCA sentence enhancement, the presentence report concluded that the minimum and maximum term of imprisonment Davis faced was fifteen years to life in prison.

At sentencing, Davis raised three objections to the presentence report's conclusion that he qualified as an armed career

criminal. First, Davis contended that the convictions were not separate offenses but instead were part of the same course of conduct. Second, he argued that the record contained insufficient proof of the prior convictions. Finally, Davis maintained that the 2000 West Virginia breaking and entering convictions did not constitute a violent felony under the ACCA. Notably, Davis did not contend that the government breached the plea agreement or that he had been misadvised regarding the statutory maximum sentence.

The district court overruled Davis's objections and designated him an armed career criminal. With respect to Davis's contention that the West Virginia breaking and entering convictions should not have been counted under the ACCA, the court examined the state-court indictment and concluded that the convictions satisfied the generic elements of burglary. Accordingly, the court concluded that Davis was "subject to an enhanced sentence under the provisions of 18 United States Code, Section 924(e)." *Id.* 87. The court determined that Davis's advisory guidelines range was 168 to 210 months in prison. But because Davis was an armed career criminal, the court imposed a sentence of 180 months, consistent with the fifteen-year statutory minimum under the ACCA.

Nearly nine months after sentencing, Davis filed a pro se petition under 28 U.S.C. § 2255 challenging his sentence. Davis argued that he received ineffective assistance of counsel based, in part, on his lawyer's failure to abide by his request to file a direct appeal.[1] Davis's attorney had recently died and so was unable to respond to Davis's assertion. Based on the "unusual circumstances," the court granted Davis's

---

[1]A defendant cannot waive "his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel." *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005) (internal quotation marks omitted). Accordingly, Davis's petition asserting ineffective assistance of counsel was not barred by the appeal waiver.

petition in part and allowed him fourteen days to appeal his sentence. *Id.* 209.

Davis raises two primary arguments on appeal. First, he contends that the government breached the plea agreement and deprived him of the benefit of his bargain. Second, he challenges the district court's conclusion that he qualified as an armed career criminal. We address each claim in turn.

II.

Davis contends that the government breached the plea agreement by failing to adhere to its promise of a ten-year prison sentence. As a remedy for the breach, he asks us to vacate his sentence and remand with instructions that the district court impose a ten-year term of imprisonment. Because Davis raises this issue for the first time on appeal, our review is for plain error. *See United States v. McQueen*, 108 F.3d 64, 65–66 (4th Cir. 1997). Finding no error, plain or otherwise, we reject Davis's claim.

A plea agreement is "essentially a contract between an accused and the government" and is therefore subject to interpretation under the principles of contract law. *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011). As such, "[i]t is elementary that, 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Id.* (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). And while "each party should receive the benefit of its bargain," the government is bound only by the promises it actually made to induce the defendant's plea. *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009) (internal quotation marks omitted).

Davis's claim for breach fails insofar as he seeks the benefit of a promise that the government never made. In the plea agreement, the government agreed to make a series of "*non-*

*binding* recommendations" but did not promise a particular sentence. J.A. 57. In fact, the agreement explicitly states that the government has made "no representations" regarding the final disposition and that the final decision regarding Davis's sentence belonged to the court. *Id.* Although the plea agreement admittedly misstates the applicable statutory maximum sentence, at no point did the government guarantee Davis a ten-year term of imprisonment. Accordingly, Davis is unable to point to a promise that the government breached.

Even if the government had made and subsequently breached a promise for a particular sentence, Davis is nevertheless not entitled to the "specific performance" he now seeks. The ACCA mandates a fifteen-year sentence for any defendant who qualifies as an armed career criminal. Having concluded that Davis was subject to the ACCA enhancement, the district court could not have imposed a sentence that contravened the applicable statute. *See United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) ("[A] district court has *no* discretion to impose a sentence outside of the statutory range established by Congress for the offense of conviction."). Thus, even if the government's conduct amounted to a breach—which it did not—we have no authority to order the district court to impose an unlawful sentence. Accordingly, Davis's claim fails.

Despite recognizing that the plea agreement did not explicitly guarantee Davis a particular sentence, our concurring colleague concludes that such a promise exists based on the government's failure to correct the district court's misstatement of the statutory mandatory minimum sentence at the Rule 11 hearing. The concurring opinion reasons that the plea agreement was therefore effectively modified or alternatively that there was an ambiguity created that should be construed against the government. *Post* at 18–19. The fact remains, however, that the plea agreement unambiguously stated, "There have been no representations whatsoever by any agent or employee of the United States, or any other law enforce-

ment agency, as to what the final disposition in this matter should and will be." J.A. 57. Nothing that transpired at the Rule 11 hearing altered this unambiguous language to create a promise where one did not otherwise exist.

Furthermore, even if the government had made such a promise, the district court would have been compelled to reject the agreement because the government cannot obligate the court to impose a sentence that contravenes the statute. *See Robinson*, 404 F.3d at 862. Contrary to the concurring opinion's assertion, our conclusion does not "invite[ ] great uncertainty," *post* at 19, but instead is entirely consistent with decisions of our sister circuits, who have declined to recognize a breach under similar circumstances. *E.g.*, *United States v. Williams*, 198 F.3d 988, 992–93 (7th Cir. 1999) (holding in a case in which the plea agreement misstated the statutory maximum sentence under the ACCA that "the paragraph of the Agreement referencing a maximum sentence of ten years was merely a recitation of a mistake of fact . . . and not part of the promise agreed to by the government"); *see also United States v. Coblentz*, 274 Fed. App'x 651, 653–54 (10th Cir. 2008) (unpublished) (affirming the imposition of a fifteen-year mandatory minimum sentence under the ACCA even though the plea agreement erroneously stated that the defendant faced a ten-year statutory maximum sentence).

## III.

We next turn to Davis's contention that the district court erred in designating him an armed career criminal. In response, the government asserts that Davis's challenge is barred by the appeal waiver contained in his plea agreement. We first examine the validity of the waiver before turning to the merits of Davis's challenge to his ACCA sentence.

## A.

A defendant may waive the right to appeal his conviction and sentence so long as the waiver is knowing and voluntary.

*United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992). We review the issue of whether a defendant effectively waived his right to appeal de novo, and will enforce the waiver if it is valid and the issue appealed is within the scope of the waiver. *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005). An appeal waiver contained in a plea agreement is valid if the defendant "knowingly and intelligently agreed to waive the right to appeal." *Id.* at 169. Although the validity of an appeal waiver often depends on the adequacy of the plea colloquy, "the issue ultimately is evaluated by reference to the totality of the circumstances." *Id.* (internal quotation marks omitted).

We hold that the waiver in Davis's plea agreement is invalid because he did not knowingly waive the right to appeal the sentence ultimately imposed. The agreement states that Davis "waives the right to appeal his sentence within the maximum provided in the statute of conviction." J.A. 59. Prior to his plea, however, Davis was misadvised repeatedly regarding the actual applicable statutory maximum sentence. The plea agreement states that "[t]he maximum penalty to which defendant will be exposed by virtue of his plea of guilty . . . [is] imprisonment for a period of *(10) ten years*." *Id.* 56. And at Davis's Rule 11 hearing, the government and the court compounded the mistake by repeating this same advice.

Under these circumstances, we cannot say that Davis "knowingly and intelligently" waived appellate review of the fifteen-year sentence imposed by the court. *See Blick*, 408 F.3d at 169. To the contrary, when Davis agreed to waive his right to appeal, from his perspective, all indications were that he faced at most a ten-year term of imprisonment. The failure to account for the ACCA sentence enhancement rendered Davis's assent to the appeal waiver unknowing. Accordingly, we proceed to consider his alleged sentencing errors.

B.

In reviewing the district court's determination that Davis is an armed career criminal, we review factual findings for clear

error and legal conclusions de novo. *United States v. Rivers*, 595 F.3d 558, 560–61 (4th Cir. 2010). The ACCA sentence enhancement applies to defendants who violate § 922(g) and have three previous convictions for "serious drug offense[s]" or "violent felon[ies]." 18 U.S.C. § 924(e)(1).

In support of its determination that Davis was an armed career criminal, the district court concluded that Davis had previously committed three violent felonies based on his state-court convictions for burglary and attempted breaking and entering. Davis challenges that conclusion on two grounds. He first contends that the district court erred in classifying his 2000 West Virginia convictions for attempted breaking and entering and conspiracy to commit breaking and entering as a violent felony. He next argues that his 1993 burglary convictions in West Virginia and Ohio should be treated as a single predicate offense. Finding these claims to be meritless, we affirm.

1.

The district court held that Davis's 2000 West Virginia convictions for attempted breaking and entering and conspiracy to commit breaking and entering constituted generic burglary and therefore counted as a predicate offense under the ACCA.[2] Davis disagrees, contending that the convictions were not violent felonies. Because Davis was convicted of *attempted* breaking and entering, the district court's conclusion that Davis's crime qualified as generic burglary was wrong. We find that the error was harmless, however, because the conviction satisfies the ACCA definition of violent felony even when considering that Davis was convicted of an attempt.

---

[2]The attempt and conspiracy convictions stemmed from the same criminal transaction. The district court therefore correctly counted them as a single predicate offense. *See* 18 U.S.C. § 924(e)(1) (explaining that offenses must be "committed on occasions different from one another").

For purposes of the ACCA sentence enhancement, Congress defined "violent felony" to include several discrete crimes, including burglary, as well as any crime that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Rather than leave the definition of the discrete crimes to the variances of state law, the Supreme Court has held that they "must have some uniform definition" based on the generic elements of the offense. *Taylor v. United States*, 495 U.S. 575, 590–92 (1990). In *Taylor*, the Supreme Court clarified the elements of generic burglary, holding as follows:

> [A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Id.* at 599.

In determining whether a prior conviction qualifies as an ACCA predicate, courts first follow a categorical approach that "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. When a statute proscribes different categories of crimes, however, "such that it can be construed to enumerate separate crimes," courts may employ a modified categorical approach. *Rivers*, 595 F.3d at 563.

In *Shepard v. United States*, 544 U.S. 13, 16 (2005), the Court clarified that under the modified categorical approach, courts may examine other materials such as the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Looking to these *Shepard*-approved documents, courts determine whether a defendant necessarily

admitted the elements of the generic offense by pleading guilty to a nongeneric state statute. *Id.* at 26.

Under the categorical approach, it is unclear whether breaking and entering under the West Virginia statute satisfies the elements of generic burglary. The applicable statute provides as follows:

> If any person shall, at any time, break and enter, or shall enter without breaking, any office, shop, underground coal mine, storehouse, warehouse, banking house or any house or building, other than a dwelling house or outhouse adjoining thereto or occupied therewith, any railroad or traction car, propelled by steam, electricity or otherwise, any steamboat or other boat or vessel, or any commercial, industrial or public utility property enclosed by a fence, wall or other structure erected with the intent of the property owner of protecting or securing the area within and its contents from unauthorized persons, within the jurisdiction of any county in this state, with intent to commit a felony or any larceny, he or she shall be deemed guilty of a felony and, upon conviction, shall be confined in a state correctional facility not less than one nor more than ten years.

W. Va. Code Ann. § 61-3-12. Because the statute criminalizes the entry of places other than "a building or structure" with the intent to commit a felony therein, *see Taylor*, 495 U.S. at 599, a conviction under the West Virginia statute does not necessarily constitute generic burglary. *See United States v. Foster*, 662 F.3d 291, 293 (4th Cir. 2011) (concluding that the Virginia breaking and entering statute was "broader than 'generic burglary' " and therefore resorting to a review of *Shepard*-approved documents).

We therefore turn to the modified categorical approach to determine whether Davis's convictions involved a violent fel-

ony. Based on its review of the state-court indictment—a *Shepard*-approved document—the district court, in determining the place entered, concluded as follows:

> [W]e are not speaking about a railroad car or a vehicle or something not a building or structure that might be contained in the West Virginia statute, we are simply talking about . . . the Temple Shalom church building of which specifically the defendant was charged and entered a plea. And the indictment illustrates the building and charges with intent to commit a felony therein.

J.A. 85. The court then held that Davis's convictions were for generic burglary. Because Davis was convicted of attempted breaking and entering, however, the inquiry does not end here.

Davis's conviction is not for a completed breaking and entering, and so we must consider whether his specific conduct satisfies the generic definition of burglary. More specifically, the relevant question is whether the additional attempt element removes the crime from the definition of generic burglary. *See James v. United States*, 550 U.S. 192, 197 (2007) (finding that attempted burglary under Florida law is not generic burglary for purposes of the ACCA because it requires the additional element "that the defendant 'fai[l] in the perpetration or [be] intercepted or prevented in the execution' of the underlying offense" (citing Fla. Stat. § 777.04(1))).

West Virginia has not adopted an attempt statute specifically applicable to breaking and entering; therefore, Davis's conviction must have been under West Virginia's general attempt statute. Like the Florida statute at issue in *James*, West Virginia's general attempt statute prescribes criminal penalties for "[e]very person who attempts to commit an offense, but *fails* to commit or *is prevented* from committing

it." W. Va. Code § 61-11-8 (emphasis added). The Supreme Court of Appeals of West Virginia has held that attempted breaking and entering requires an element in addition to generic burglary—the unlawful entry or the breaking and entering must have failed or been prevented. *State v. Franklin*, 79 S.E.2d 692, 697 (W. Va. 1953). Therefore, Davis's conviction for attempted breaking and entering cannot qualify as generic burglary for purposes of the ACCA. *See James*, 550 U.S. at 197.

The question then becomes whether attempted breaking and entering as defined under West Virginia law, "falls within the ACCA's residual provision for crimes that 'otherwise involve[e] conduct that presents a serious potential risk of physical injury to another.' " *Id.* (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). We find that it does.

Resolution of this issue is controlled by *James* and its progeny. Under *James*, a crime falls within the residual provision if it involves "purposeful, violent, and aggressive conduct," *Begay v. United States*, 553 U.S. 137, 144–45 (2008), that "in the ordinary case, presents a serious potential risk of injury to another," *James*, 550 U.S. at 208. Although the Supreme Court of Appeals of West Virginia has not directly addressed the elements of attempted breaking and entering, it has in other contexts held that, "where formation of criminal intent is accompanied by preparation to commit the crime . . . and a direct, overt and substantial act toward its perpetration," the crime of attempt is complete. *See State v. Burd*, 419 S.E.2d 676, 680 (W. Va. 1991). Harmonizing these authorities, therefore, the crime of attempted breaking and entering requires an intentional, substantial, and overt act toward perpetration of a breaking and entering with intent to commit a felony. The dispositive question then becomes whether such conduct presents a serious potential risk of physical injury to another. *James*, 550 U.S. at 203.

In *James*, the Supreme Court determined that attempted burglary, as defined by Florida law, fell into this category. *Id.*

at 195. Under Florida law, attempted burglary requires "an 'overt act directed toward entering or remaining in a structure or conveyance' " with intent to commit an offense therein. *Id.* at 202 (quoting *Jones v. State*, 608 So. 2d 797, 799 (Fl. Dist. Ct. App. 1992)). These elements are substantially the same as those that define attempted breaking and entering under West Virginia law.

The Court in *James* found that attempted burglary under Florida law poses basically the same risks as completed burglary: "the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *Id.* at 203. Moreover, the Court explained that the categorical approach does not require "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Rather, "[a]s long as the offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision." *Id.* at 209.

The same general considerations that led the Court to conclude that attempted burglary presents a serious potential risk of physical injury to another in *James* are equally present here. Indeed, the predicate offense at issue in that case is largely indistinguishable from the one before us. Accordingly, we find that, although the district court below erred in determining that Davis's convictions for attempted breaking and entering and conspiracy to break and enter qualified as generic burglary under the ACCA, such error is harmless because Davis's offense falls under the residual provision for crimes that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

2.

Davis also argues that his two 1993 convictions for burglary should be viewed as one offense under the ACCA because the sentences ran concurrently and the burglaries were both related to his substance abuse. We disagree.

To be counted separately, the ACCA requires that predicate offenses must have been "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Interpreting this requirement, we have ruled that "[c]onvictions occur on occasions different from one another if each of the prior convictions arose out of a separate and distinct criminal episode." *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995) (emphasis and internal quotation marks omitted). In reviewing whether convictions occurred on separate occasions, we consider, in part, whether the offenses occurred at different geographical locations and had multiple victims. *Id.* at 335-36.

We have little difficulty concluding that Davis's 1993 burglary convictions in Ohio and West Virginia occurred on occasions different from one another. Whatever the impetus for the two offenses, they were committed in different states almost a month apart and involved different victims. There is therefore no doubt that Davis had ample opportunity "to make a conscious and knowing decision to engage in another [crime]" after the completion of the first burglary. *See id.* at 337. The two burglary convictions are thus separate offenses under the ACCA.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

KISER, Senior District Judge, concurring:

I join the majority opinion in full with the exception of Part II. Although I agree with the majority's ultimate conclusion that Davis is not entitled to the relief he seeks for breach of the plea agreement and that the judgment of the district court should be affirmed, I arrive at that conclusion via a somewhat different route. Accordingly, I write separately.

Specifically, I disagree with the majority's determination that the government did not breach the plea agreement in this case. The majority correctly states that plea agreements are subject to ordinary contract law principles. *Ante* at 6. Nevertheless, because a plea agreement implicates the integrity of the justice system, courts "hold 'the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements.'" *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004) (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)); *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997). This heightened responsibility on the part of the government extends beyond the negotiation and drafting of the plea agreement to all matters relating to it. *Wood*, 378 F.3d 348–49 (citing *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994)). During the Rule 11 plea colloquy, therefore, the parties must disclose all material terms of the plea agreement, and the district court must confirm the defendant's understanding of these terms. *Id.* at 349 (citing *United States v. Moore*, 931 F.2d 245, 249 (4th Cir. 1991); *Hartman v. Blankenship*, 825 F.2d 26, 28 (4th Cir. 1987)). "Because the purpose of the plea colloquy is to establish that the defendant knowingly and voluntarily enters his plea . . . he will naturally . . . rely on the district court's characterization of the material terms disclosed during the hearing." *Id.* (citing *United States v. Buchanan*, 59 F.3d 914, 918 (9th Cir. 1995); *United States v. Moore*, 931 F.2d 245, 249 (4th Cir. 1991)). Therefore, where the government acquiesces in the district court's pervasive mischaracter-

ization of a material term, it effectively modifies and, thus breaches, the terms of the plea agreement. *Id.* (citing *Buchanan*, 59 F.3d at 917–18).

The majority finds that the government made Davis no promise regarding his maximum sentence. It reasons that "the government agreed to make a series of '*nonbinding* recommendations' but did not promise a particular sentence." *Ante* at 6-7. It is true that the plea agreement does not in so many words "promise" or "guarantee" Davis that he will receive a particular sentence. Nevertheless, the plea agreement assures Davis, in clear, declarative language, that "[t]he maximum penalty to which the defendant will be exposed by virtue of his plea of guilty . . . is: imprisonment for a period of (10) ten years." J.A. 56. Moreover, as the majority acknowledges, *ante* at 3-4, this misrepresentation was compounded by the court during the Rule 11 colloquy. At that time, the court reiterated more than once that Davis would not "*in any event* receive a greater sentence than the statutory maximum [of ten years]." J.A. 32, 34 (emphasis added). Thus, Davis was repeatedly told, in no uncertain terms, that he would not, under any circumstances, receive a sentence greater than ten years. A reasonable person in Davis's position would have believed, based on the plea agreement language and the court's characterization of its terms, that he would not receive a sentence greater than ten years. I find that such clear assurances constitute a promise for the purposes of a plea agreement.

In further support of its determination that the government did not breach the plea agreement, the majority points out that the agreement explicitly disclaims any "representations . . . as to what the final disposition in this matter should and will be." J.A. 57. The court reiterated this language during the plea colloquy. J.A. 32, 34, 51–52. Nevertheless, this language does not effectively negate the plea agreement's assurances that Davis will not receive a sentence of greater than ten years. The court did not explain that factors contained in Davis's Presentence Report could result in a sentence above the ten

year statutory maximum. Davis would (and probably did) reasonably understand this qualifying language to mean only that factors contained in the Presentence Report would result in an as yet unspecified sentence somewhere within the range of the ten year maximum. Neither the written plea agreement nor the court clarified that such factors could result in a mandatory minimum of greater than ten years. At best, therefore, the language relied on by the majority renders the plea agreement ambiguous.[1] The court's explanation to Davis during the plea colloquy essentially reiterated this ambiguity and did not cure it.[2] In light of the heightened responsibility on the part of the government to eliminate ambiguity, I would find that the government breached the plea agreement in this case. The majority's finding invites great uncertainty by allowing the government to include serious misrepresentations in plea agreements provided that it also includes imprecise boilerplate language disclaiming any guaranteed outcome.

Nevertheless, I ultimately agree with the majority that Davis is not entitled to the relief he seeks. Because Davis did not object to breach of the plea agreement below and raises this issue for the first time on appeal, we must affirm the sentence imposed by the district court unless Davis can demonstrate plain error. *Puckett v. United States*, 556 U.S. 129, 133–34 (2009). Plain error review comprises four steps: (1)

---

[1] "'[W]hether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law . . . . .'" *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007) (quoting *Harvey*, 791 F.2d at 300).

[2] This Court has held that "[w]here there are ambiguities in a plea agreement, courts may look to extrinsic evidence to show that the parties to the agreement had 'mutually manifested their assent to [ ] an interpretation.'" *United States v. Bryant*, 436 Fed. App'x 254, 256 (4th Cir. 2011) (quoting *Jordan*, 509 F.3d at 200). In particular, the district court's guidance to the defendant during the plea colloquy may be sufficient to cure any ambiguity in the plea agreement. *Id.* During the plea colloquy in this case, the court did little more than reiterate the ambiguous terms of the plea agreement.

"there must be an error or defect—some sort of '[d]eviation from a legal rule'—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by appellant;" (2) "the legal error must be clear and obvious, rather than subject to reasonable dispute;" (3) "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings;'" and (4) "if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 135 (quoting *United States v. Olano*, 507 U.S. 725, 732–36 (1993)). Even if the government's breach of the plea agreement satisfies the first two steps, Davis cannot show that the breach affected the outcome below and, therefore, cannot satisfy the third step.

"[T]he question with regard to prejudice is not whether [the defendant] would have entered the plea had he known about the future violation. When rights acquired by the defendant relate to sentencing, the 'outcome,' he must show to have been affected is his *sentence*." *Puckett*, 556 U.S. at 142 n.4 (internal citation omitted) (emphasis added). This is consistent with the Fourth Circuit's rule that, "[i]n the sentencing context, an error affects substantial rights if the defendant can show that the sentence imposed 'was longer than that to which he would otherwise be subject.' " *United States v. Holmes*, 380 Fed. App'x 367, 369 (4th Cir. 2010) (quoting *United States v. Washington*, 404 F.3d 834, 849 (4th Cir 2005)). "The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway . . . or because he likely would not have obtained those benefits in any event." *Puckett*, 556 U.S. at 141–42. Davis's assertion that he would not have pled guilty but for the government's promise of a ten-year maximum, therefore, is insufficient to show prejudice under *Puckett*.

Where an appellant asserts breach of a plea agreement, he must show that his sentence would have been different but for the government's breach. Davis cannot make such a showing. Because Davis was subject to a mandatory statutory minimum under the ACCA, the government's breach of the plea agreement had no effect on his ultimate sentence. *United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) ("[A] district court has *no* discretion to impose a sentence outside of the statutory range established by Congress for the offense of conviction.").

In sum, although I ultimately agree with the majority's resolution of this case, I arrive at that resolution by a different path as set forth above. In all other respects, I join the majority opinion in full.