PD-1124-15

PD-1124-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/28/2015 5:21:25 PM
Accepted 9/1/2015 10:22:28 AM
ABEL ACOSTA
CLERK

**NO.**

## TO THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

---

## NO. 10-13-00413-CR

---

## IN THE COURT OF APPEALS

## FOR THE

## TENTH SUPREME JUDICIAL DISTRICT OF TEXAS

## AT WACO, TEXAS

---

FILED IN
COURT OF CRIMINAL APPEALS

September 1, 2015

ABEL ACOSTA, CLERK

**JAMES EARL WILLIAMS,**
**Appellant**

**V.**

**THE STATE OF TEXAS,**
**Appellee**

---

### PETITION FOR DISCRETIONARY REVIEW

---

**JOHN DONAHUE**      **ATTORNEY FOR APPELLANT**
**TBA #05968300**     **JAMES EARL WILLIAMS**
**204 N. 6th St.**
**Waco, Texas 76701**
**(254) 752-9090**
**(254) 753-1232 FAX**
**Texascriminalattorney@yahoo.com**

### ORAL ARGUMENT REQUESTED

## SUBJECT INDEX

PAGE

Identification of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

List of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

## GROUND FOR REVIEW

*Whether Appellant is entitled to dismissal of his indictment in 2012-623-C2, which alleges an offense date of June 12, 1998, on the ground that he is entitled to specific performance of a plea agreement entered into in 2002 pursuant to which the State agreed to refuse **any** other unfiled case of which they had notice.*

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Procedural History of the Case . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts Pertinent To Petitioner's
  Ground for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ground for Review (Restated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Reasons for Review as to Ground for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Arguments and Authorities in Support of Petitioner's Ground for Review . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

APPENDIX - Opinion of 10th Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . end

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner respectfully asserts that this Court would be aided in the resolution of the matters which are the subject of this Petition for Discretionary Review if oral argument were granted. Therefore, Petitioner respectfully requests that this Court set this case for oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Tex.R.App. 68.4(a), a complete list of the names of all interested parties is provided below:

Abelino "Abel" Reyna - District Attorney of McLennan County, Texas
Brandon Luce, Landon Ramsey - Assistant District Attorneys
219 N. 6th St., Waco, TX 76701

James Earl Williams - Appellant

Ron Moody, Jason Darling - Counsel for Appellant in trial court
204 N. 6th St., Waco, TX 76701

John Donahue - Counsel for Appellant on appeal
204 N. 6th St., Waco, TX 76701

Hon. Matt Johnson - Presiding Judge

# LIST OF AUTHORITIES

CASES                                                                    PAGE

*Alazarka v. State*, 90 S.W.3d 321 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . 7

*Doherty v. King*, 183 S.W.2d 1004, 1007 (Tex. Civ. App. 1944) . . . . . . . . . . . . . 6

*Ex parte Deleon*, 400 S.W.3d 83 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . 7

*Ex parte Moussazadeh*, 64 S.W.3d 404 (Tex. Crim. App. 2001) . . . . . . . . . . . . . 8

*Hatley v. State*, 206 S.W.3d 710 (Tex.App–Texarkana, 2006, no pet.) . . . . . . . . . 9

*In re: Arnett*, 804 F.2d 1200 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) . . . . . . . . . . . . . . . . . . . . . 11

*Mabry v. Johnson*, 467 U.S. 504, 104 S. Ct. 2543 (1984) . . . . . . . . . . . . . . . . . . 9

*Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 (1971) . . . . . . . . . . . . . . 9,10

*State v. Gomez*, 267 P.3d 831 (N.M. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State v. Howington*, 907 S.W.2d 403 (Tenn. 1995) . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Garcia*, 519 F.2d 1343 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . 10

*United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . 7,10

*United States v. Andis*, 333 F.3d 886 (8th Cir. 2003),
    *cert. denied* 540 U.S. 997 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Washington v. State*, 559 S.W.2d 825 (Tex. Crim. App. 1977) . . . . . . . . . . . . . . 11

## STATEMENT OF THE CASE

This is an appeal from a jury trial in the 54th District Court, McLennan County, Texas, the Honorable Matt Johnson, presiding, Cause Number 2012-623-C2. The State instituted proceedings against the Appellant, James Earl Williams, for the offense of murder, a first degree felony, in violation of Tex. Penal Code §19.02. Mr. Williams pleaded not guilty and a jury trial was conducted. Mr. Williams was convicted and punishment was assessed by the jury at 85 years in TDC. No fine was imposed.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On November 20, 2013, Mr. Williams timely filed his Written Notice of Appeal. His brief was filed on June 16, 2014. The State's reply brief was filed on August 16, 2014. On July 30, 2015, the Tenth Court of Appeals issued an opinion overruling Williams' point of error and affirming his conviction. Chief Justice Gray filed a dissenting opinion.

No motion for rehearing was filed. This petition for discretionary review is being filed within 30 days of the Court of Appeal's opinion.

## STATEMENT OF FACTS

On December 2, 1998, Mr. Williams was indicted in Cause Number 98-880-C with the offense of aggravated robbery, and in Cause Number 98-881-C with the offense of aggravated assault. On March 29, 2001, Joe Layman was appointed to represent Mr. Williams.[1] On November 16, 2001, Mr. Layman sent Mr. Williams a letter stating: "I am going to meet with Assistant District Attorney Mark Parker[2] on Tuesday, November 20, 2001. Mr. Parker has been talking to me about an unfiled murder case. I want to look at the District Attorney's files to see what kind of evidence they think they have against you." *See* Volume 11, pg. 207. On November 20, 2001, Mr. Layman sent Mr. Williams another letter which referenced meeting with Mark Parker regarding "the unfiled murder case." *See* Volume 11, pg. 205.

On February 22, 2002, Mr. Williams entered a guilty plea before Judge George Allen, then presiding judge of the 54th Judicial District Court, to the two 1998 cases. Present at the plea proceeding were Mr. Williams' attorney, Joe Layman, and assistant district attorney Mark Parker. *See* Volume 11, ppg. 262-265, 363-365. At this plea proceeding, the following exchange occurred:

---

[1] At the time of the 2013 hearing on Mr. Williams' motion to dismiss the indictment, Mr. Layman was employed as an assistant district attorney for McLennan County.

[2] Mr. Parker was employed as an assistant district attorney in McLennan County at the 2002 plea hearing, and was in fact the prosecutor who handled Williams' plea proceeding. Mr. Parker is also currently employed as an assistant district attorney in McLennan County.

2

Judge Allen:        And has there been a plea bargain entered into between the State and the defense?

Mr. Parker:         Yes, your honor.  The State's agreed to recommend 15 years confinement in the penitentiary.

Judge Allen:        Is that your understanding of the plea bargain, Mr. Layman?

Mr. Layman:         Yes, sir, in each case.  *And the State, um, is going to refuse prosecution of any other case in which the State has notice*, um -

Mr. Parker:         *That's correct.*

Mr. Layman:         - - *unfiled cases.*

Mr. Parker:         *That's correct.*

* * * *

Judge Allen:        And do you further understand that if I do accept the recommendation of the State, that you'll not be able to appeal your case unless I give you permission to do so?

Mr. Williams:       Yes, sir.

Judge Allen:        And do you understand what the recommendation is in each of these cases?

Mr. Williams:       Yes, sir.

Judge Allen: Knowing each of these matters, do you still wish to enter a plea of guilty in each case, is that correct?

Mr. Williams: Yes.

Judge Allen: I accept your pleas of guilty.

Volume 11, ppg. 426-429.

Thereafter, the trial court found Mr. Williams guilty of the two offenses and sentenced him in accordance with the plea agreements as written and as stated by the parties in open court. Volume 11, ppg. 426-429.

Despite the foregoing plea agreement, on March 28, 2012, Mr. Williams was indicted in Cause Number 2012-623-C2 with the offense of murder, alleged to have been committed on or about June 12, 1998. *See* Clerk's record, ppg. 6-7. This is the same murder case that was mentioned by Mr. Layman in the above referenced letters as "the unfiled murder case". In documents filed by the State, it is acknowledged that the State had investigatory reports in its possession regarding the murder charge from Waco PD at least by the year 2000, and also that several witnesses had been called by the State before the grand jury in furtherance of the police investigation. *See* Clerk's Record, pg. 82. Clearly, the State had notice of the unfiled murder charge at the time of the 2002 plea hearing. Furthermore, the State did not dispute what was contained in the transcript of the plea proceeding. (R. 5, pg. 16).

4

At the 2013 hearing, Mr. Williams, through his attorneys, moved the trial court to dismiss the murder charge on the grounds that it was an unfiled case of which the State had notice and thus was part of the plea agreement in the 2002 plea hearing. (R. 4, pg. 9, R. 6, pg. 4). The State argued, despite the clear language of the plea proceeding, that it was not the intention of the parties (i.e. the lawyers for the State and the defense) at the time of the plea that the murder charge be included as part of the plea agreement. Alternatively, the State argued that the terms of the plea agreement, as stated in open court, were ambiguous, and thus extrinsic evidence regarding the intent of the lawyers should be allowed. (R. 4, ppg 12-18). Ultimately, the trial court denied Mr. Williams request to dismiss the indictment. (R. 6, pg. 4).

**Court of Appeals**

The Court of Appeals stated that because the written plea agreement did not reference the unfiled murder charge, the Court then relied upon the affidavits of Mark Parker and Joe Layman to determine that an ambiguity existed as to whether the 2002 plea included the refusal of the unfiled murder charge. The Court then construed that ambiguity against Mr. Williams and held that the trial court did not err in not dismissing the murder charge.

Chief Justice Gray dissented, stating that there was no ambiguity. What was stated in court was written down and no one disagreed with the transcription of the

5

plea proceeding. The State agreed to refuse prosecution of any unfiled case of which they had notice. They had notice of the murder charge.

## GROUND FOR REVIEW (RESTATED)

*Whether Appellant is entitled to dismissal of his indictment in 2012-623-C2, which alleges an offense date of June 12, 1998, on the ground that he is entitled to specific performance of a plea agreement entered into in 2002 pursuant to which the State agreed to refuse **any** other unfiled case of which they had notice.*

## REASONS FOR REVIEW AS TO GROUND FOR REVIEW

1.  The Justices of the Tenth Court of Appeals have disagreed on a material question of law necessary to the Court's opinion.

2.  The Court of Appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals.

3.  The Court of Appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeals' power of supervision.

## ARGUMENTS AND AUTHORITIES IN SUPPORT
## OF PETITIONER'S GROUND FOR REVIEW

**ANY**:   Words and Phrases, Vol. 3, Perm.Ed., page 530, says: 'In construing statutes, the word 'any' is equivalent to and has force of 'every' or 'all.'

Webster's New International Dictionary, 2 Edition, says: 'The word 'any' used in a plural sense means 'all'.'

*See Doherty v. King*, 183 S.W.2d 1004, 1007 (Tex. Civ. App. 1944) .

One can Google "any":    used to refer to one or some of a thing or number of things, *no matter how much or many*.

"Any" is not ambiguous.  It means every or all.  When the State agreed to refuse "any" other unfiled charge of which it had notice, one can substitute "every" or "all" in place of "any".

In 2002, when Mr. Williams entered his guilty plea, the State had notice of the murder charge in this case.  Of that there is no dispute.  During the plea proceeding in 2002, the State agreed that in exchange for Mr. Williams' plea in the other cases, it would refuse any other unfiled case.  Not some other cases.  Not all but one.  Not certain ones.  The agreement was for all unfiled cases of which the State had notice.  The agreement was unambiguous and the Court of Appeals should have looked no further.

Courts first determine whether the written agreement is ambiguous on its face. If the agreement is unambiguous and there is no allegation of government overreaching, the courts should enforce the agreement according to its plain words. *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986).

The written plea papers as well as the terms of the plea agreement as stated in open court determine the scope of the plea agreement. *See Ex parte Deleon*, 400 S.W.3d 83 (Tex. Crim. App. 2013) and *Alazarka v. State*, 90 S.W.3d 321 (Tex. Crim.

App. 2002), in which it was held that the formal record of the plea proceeding can rebut any presumption raised by the terms of the boiler plate agreement signed by a defendant. *See also Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001)(Courts look to the written plea agreement and the plea hearing to discern the contracting parties' *obligations*). (Emphasis added). What is clear from the preceding statement is that is the parties' obligations that is to be determined. As Chief Justice Gray stated, the State was obligated to refuse the unfiled murder charge, because that was what was clearly and unambiguously stated in open court at the time of Mr. Williams' plea. The majority superimposed intent for obligation, replacing the State's obligation for what was 11 years later stated to be the intent.

During the plea proceeding, it was clearly stated that any[3] unfiled case would be refused. No exceptions were stated. Nothing was left out. Nothing was excluded. Mr. Parker had spoken to defense counsel about the murder case. Defense counsel had written two letters explaining that he was looking into the unfiled murder case on Mr. Williams' behalf. Mr. Parker was present at the plea proceeding, and Mr. Parker was the one who agreed to the terms of the plea agreement in open court. No statement was made at the time that the agreement included all unfiled cases except one. Mr. Parker made no claim that he forgot about the murder case.

---

[3]Read: "every" or "all".

There was no ambiguity in the plea agreement as stated. The Supreme Court has held that the states should be held to strict compliance with their promises. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 (1971). The Court of Appeals did not do so in this case. Rather, the court ignored the plain language of the plea agreement and the language regarding construction of contracts and created the ambiguity by first looking at the affidavits of the two attorneys. This is obvious from the Court's opinion. There was no discussion as to whether the plain language was ambiguous. Rather, in the second paragraph of the opinion, the Court immediately began discussing the affidavits of the two attorneys (now both prosecutors) involved in the case. This is not what contract law mandates. The plain language of the agreement controls. Only if it is ambiguous does the analysis extend to extraneous evidence to determine intent. *Hatley v. State*, 206 S.W.3d 710 (Tex.App–Texarkana, 2006, no pet.). The plea agreement was not ambiguous. The discussion should never have gon beyond the plain language of the plea agreement. The Court of Appeals should never have discussed the affidavits of the two lawyers, much less have started with them.

Even then, the Court of Appeals overlooked the principal that if there was an ambiguity, it must be construed against the State. Due process requires the government to adhere to the terms of any plea bargain it makes. *See Mabry v.*

*Johnson*, 467 U.S. 504, 104 S. Ct. 2543 (1984) (plea agreement); *Santobello v. New York*, 404 U.S. 257, [1444] 92 S. Ct. 495 (1971) (plea agreement). Courts should interpret plea agreements consistently with what the defendant reasonably understood when he entered the plea. *In re: Arnett*, 804 F.2d 1200, 1201-02 (11th Cir. 1986); *see also State v. Gomez*, 267 P.3d 831 (N.M. App. 2011). Any imprecision in the terms of the plea agreement are to be construed against the government. Any ambiguity goes against the government. *United States v. Harvey*, 791 F.2d 294 at 300 (11th Cir. 1986). *See also United States v. Andis*, 333 F.3d 886 (8th Cir. 2003), *cert. denied* 540 U.S. 997 (2003): Plea agreements will be strictly construed and any ambiguities in these agreements will be read against the government and in favor of a defendant's rights. "Ambiguities in the agreement must be construed against the State". *State v. Howington*, 907 S.W.2d 403 (Tenn. 1995). "The upholding of the government's integrity allows for no other conclusion." *United States v. Garcia*, 519 F.2d 1343 (9th Cir. 1975).

In this case, the Court of Appeals took the plain language of the plea agreement and injected ambiguity. After doing so, the Court then resolved that ambiguity in favor of the State. This should not have happened and should not be allowed. The courts are clear that if there is an ambiguity, it gets resolved against the government.

The State cannot alter terms of the plea agreement, as stated in open court, by

later stating that was not what was intended. As was the situation in *Washington v. State*, 559 S.W.2d 825, 827-28 (Tex. Crim. App. 1977), the understanding of the defendant's trial attorney and the prosecutor, given in the form of testimony after the trial court accepted the plea agreement, was not allowed to change the terms of the agreement entered into during the plea proceeding.

## Conclusion

The plea agreement was unambiguous. Mr. Williams pleaded guilty, waiving his constitutional rights in reliance on that plea agreement. That should have been the end of it. However, after a change in District Attorneys, this case was indicted, and the State did not like the terms of the plea agreement from 2002. Thus was born the ambiguity, which was then used by the Court of Appeals against Mr. Williams, not the State, as required.

When analyzing a contract, Courts must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both. *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

Mr. Williams simply asks this Court to enforce the plea agreement he entered into. It is clear. It is plain. The fact that the subsequent prosecutor's office did not

like it should not change that fact. And even if there was any ambiguity, that should have been applied against the State. Not Mr. Williams. This decision cannot stand.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Mr. Williams respectfully requests that this Honorable Court review the transcript of the proceedings in this case, and after such review, determine that the Court of Appeals improperly decided his point of error; reverse the decision of the Court of Appeals, and remand to the Court of Appeals with instructions that the indictment in this case should have been dismissed.

Respectfully submitted,
 */S/ John Donahue*
JOHN DONAHUE
TBA #05968300
204N. 6th St.
Waco, Texas  76701
(254) 752-9090
Fax (254) 753-1232
Texascriminalattorney@yahoo.com

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Corrected Petition for Discretionary Review was forwarded to the following on August 28, 2015.

/S/ John Donahue
JOHN DONAHUE

Sterling Harmon
Ass't District Attorney
McLennan County, Texas
219 N. 6th St., Suite 200
Waco, TX 76701
(254) 757-5084
(254) 757- 5021
Sterling.Harmon@co.mclennan.tx.us

James Earl Williams #91893-080
FCI Beaumont
P.O. Box 26040
Beaumont, TX 77720

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because:

■      this brief contains 3340 words, including the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1), or,

☐      this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.      This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because:

■      this brief has been produced on a computer in conventional typeface using Corel Wordperfect 8.0 in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

☐      this brief is a typewritten document printed in standard 10 character per inch monospaced typeface.

*/S/ John Donahue*
JOHN DONAHUE
Attorney for Appellant
Dated:   August 28, 2015



# IN THE
## TENTH COURT OF APPEALS

### No. 10-13-00413-CR

JAMES EARL WILLIAMS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-623-C2

## MEMORANDUM  OPINION

A jury found James Earl Williams guilty of the June 12, 1998 murder of Darren Lang and assessed an eighty-five year sentence.  His sole issue asserts that the trial court erred by refusing to dismiss the indictment for the 1998 murder on the ground that it was covered by a 2002 plea agreement in which the State allegedly agreed to refuse any other unfiled case that the State had notice of.

On December 2, 1998, Williams was indicted for the offenses of aggravated robbery and aggravated assault.  In a November 16, 2001 letter to Williams, Joe Layman,

Williams's appointed attorney, stated in part:

> I am going to meet with Assistant District Attorney Mark Parker on Tuesday, November 20, 2001. Mr. Parker has been talking to me about an unfiled murder case. I want to look at the District Attorney's files to see what kind of evidence they think that they have against you.

A November 20, 2001 letter from Mr. Layman to Williams also referenced talking to Mr. Parker about "the unfiled murder case."

On February 22, 2002, Williams pled guilty before the Honorable George Allen, then-judge of the 54th District Court, to the offenses of aggravated robbery and aggravated assault in exchange for a fifteen-year sentence. The record from that plea hearing includes the following colloquy:

> THE COURT: And has there been a plea bargain entered into between the State and the defense?
>
> MR. PARKER: Yes, Your Honor. The State's agreed to recommend 15 years confinement in the penitentiary.
>
> THE COURT: Is that your understanding of the plea bargain, Mr. Layman?
>
> MR. LAYMAN: Yes, sir, in each case. And the State, um, is going to refuse prosecution of any other case in which the State has notice, um - -
>
> MR. PARKER: That's correct.
>
> MR. LAYMAN: - - unfiled cases.
>
> MR. PARKER: That's correct.

Williams's argument is that the murder of Darren Lang was an unfiled case that the State had notice of, and as such, the State is barred from prosecuting Williams for that murder based on the above.

In the trial court in the instant murder case, the State, in response to Williams's motion to bar the murder prosecution, filed the affidavits of Mr. Layman and Mr. Parker, both of whom were assistant district attorneys at the time of Williams's murder trial. In his affidavit, Mr. Parker states the following about the plea agreement he had negotiated with Mr. Layman:

> During plea negotiations we had specifically agreed that the potential Murder charge from 1998 would not be taken into consideration in any form whatsoever with these pleas. There was no attempt to have the Murder charge taken into consideration under § 12.45 of the Texas Penal Code and the Defendant in no manner admitted or asked the court to take into account the Murder offense in determining the sentence for the offenses of which he had been adjudged guilty. The State of Texas at no time has filed any written statements stating that the State wished to dismiss the Murder offense.

In his affidavit, Mr. Layman states: "The plea agreements in these cases did not in any way include consideration of an unindicted murder charge against Mr. Williams." It is undisputed that none of the plea documents refer to the murder charge.

> Once a negotiated plea agreement is formally accepted by the trial court, a binding contractual relationship exists between the State and the defendant. *Ortiz v. State,* 933 S.W.2d 102, 104 (Tex. Crim. App. 1996); *Wright v. State,* 158 S.W.3d 590, 593-94 (Tex. App.—San Antonio 2005, pet. ref'd). The Texas Court of Criminal Appeals has written that a defendant is entitled to specific performance of a negotiated plea agreement once that plea agreement has been accepted by the trial court, unless, of course, specific performance is impractical; in such cases, the defendant should be permitted to withdraw his or her plea. *Perkins v. Third Supreme Judicial Dist. of Tex., at Austin,* 738 S.W.2d 276, 283 (Tex. Crim. App. 1987). Consequently, where the State or a trial court has refused to comply with a negotiated plea agreement (which has been previously accepted by that trial court), defendants have been able to successfully seek specific enforcement of the agreement, where practicable. *See, e.g., id.* at 277-78 & 285; *Wright,* 158 S.W.3d at 594-95. Such a maxim should be of equal benefit to the State. *See Ricketts v. Adamson,* 483 U.S. 1, 9-12, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (Arizona entitled to seek prosecution of original charge of capital murder,

and seek death penalty, once defendant breached agreement to truthfully testify against codefendants).

> Because a negotiated plea agreement is a contract between the parties, we generally turn to the rules applicable to contract construction to resolve disputes about the meaning of a negotiated plea agreement. *See generally Ex parte Adkins*, 767 S.W.2d 809, 810 (Tex. Crim. App. 1989). Contract construction is a matter of law. *See Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). "A court's primary concern is to ascertain and give effect to the parties' intentions as expressed in the instrument." *Diaz*, 9 S.W.3d at 803. "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Hawthorne v. Countrywide Home Loans, Inc.*, 150 S.W.3d 574, 577 (Tex. App.—Austin 2004, no pet.) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). "Only when a contract is first determined to be ambiguous may the courts consider the parties' interpretation and consider extraneous evidence to determine the true meaning of the instrument." *Hawthorne*, 150 S.W.3d at 577 (citing *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520).

*Hatley v. State*, 206 S.W.3d 710, 718 (Tex. App.—Texarkana 2006, no pet.) (footnote omitted).

We agree with the State that, at the very least, the phrase "any other case in which the State has notice … unfiled cases" is ambiguous. And given that the plea documents do not refer to the murder charge, that Mr. Parker and Mr. Layman both state that the murder case was not included the plea agreement, and that the record reflects other unfiled cases that the State had notice of that relate to the aggravated robbery and aggravated assault charges,[1] we hold that the trial court did not err in denying Williams's motion to dismiss the murder indictment.

---

[1] The offense reports pertaining to the aggravated robbery and assault charges reflect that Williams entered a victim's home and robbed him at gunpoint and shot another victim. A nine-year-old bystander allegedly was struck by a stray bullet and suffered a superficial wound. Williams was not charged with either criminal trespass or injury to a child, neither of which are lesser-included offenses of the charged offenses of aggravated robbery and aggravated assault.

We overrule Williams's sole issue.  The trial court's judgment is affirmed.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
        (Chief Justice Gray dissents)
Affirmed
Opinion delivered and filed July 30, 2015
Do not publish
[CRPM]





IN THE
TENTH COURT OF APPEALS

No. 10-13-00413-CR

JAMES EARL WILLIAMS,

                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-623-C2

DISSENTING OPINION

There are a couple of things in this appeal that are not subject to dispute because they do not depend on memory or credibility evaluation. As to one, the agreement, there is no dispute because it is written down. The agreement was that, as part of the 2002 plea agreement to resolve other pending charges, the State agreed it "is going to refuse prosecution of any other case in which the state has notice, … unfiled cases." The other thing on which there is no disagreement is that the present murder charge was

known to the State at the time of the 2002 plea agreement. In essence, at the time of the plea agreement, it was an unfiled case of which the State had notice.

The Court in this appeal has determined there is an ambiguity in the agreement. I do not find one. There may have been a unilateral mistake about what unfiled cases were intended to be covered by the agreement. But there was no ambiguity. There may even have been a mutual mistake about what unfiled cases were intended to be covered by the agreement. But there was no ambiguity. No one has argued a mistake. There is no justification to look outside the agreement to determine the intent of the parties. Regardless of what they intended, what was written down as the agreement of the parties is clear.

The agreement was that the State would not prosecute any unfiled cases of which it had notice. The present murder case was one about which the State had notice. I can find no legal justification to let the State out of the deal that it made. Because I would reverse the judgment of conviction and remand this proceeding to the trial court with instructions to dismiss the charges against Williams, I respectfully dissent.

TOM GRAY
Chief Justice



Dissenting opinion issued and filed July 30, 2015